Henry HOPFINGER, Petitioner and Appellant,

v.

Walter LEAPLEY, Warden of the South Dakota State Penitentiary, Appellee.

No. 18271.

Supreme Court of South Dakota.

Submitted on Briefs Dec. 1, 1993.

Decided Feb. 16, 1994.

James A. Eirinberg, Sioux Falls, for petitioner and appellant.

Mark Barnett, Atty. Gen., Patricia J. Cronin, Asst. Atty. Gen., Pierre, for defendant and appellee.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

Pursuant to a plea agreement with the Brown County State's Attorney, Hopfinger pled guilty to one count of robbery in the first degree and one count of aggravated assault. On May 3, 1991, the trial court accepted both pleas and sentenced Hopfinger to 15 years in the state penitentiary for each crime, sentences to run concurrently. Following a January 6, 1993 hearing, Hopfinger was denied habeas corpus relief. He appeals, raising two issues:

I.   Did Hopfinger receive ineffective assistance of counsel in violation of his constitutional rights?

II.  Was Hopfinger capable of entering a voluntary, knowing, and intelligent plea?

We affirm.

## FACTS

After an hour of talking and drinks at an Aberdeen bar on April 22, 1991, Hopfinger and Gordon Roettele left for Hopfinger's hotel room where they engaged in consensual homosexual sex. At some point, Roettele supposedly threw Hopfinger on the bed demanding more sex. Hopfinger, who was already "very upset" with Roettele, grabbed a pair of scissors lying nearby and stabbed his partner numerous times, causing multiple injuries.

Hopfinger purportedly panicked and grabbed the victim's jewelry, money and car keys and, because he did not have a vehicle, fled in the victim's car. He was later apprehended in Webster, South Dakota, still in possession of the car and personal effects, and was charged with robbery, aggravated assault and grand theft.

Ronald Wager thereafter was appointed as counsel for Hopfinger. After consulting with Hopfinger, Wager spoke to Roettele once and reviewed his statements to the police. Although Roettele's story concerning the events prior to the stabbing repeatedly changed, Hopfinger's version was very incriminating. Wager believed this, combined with Hopfinger's sexual orientation, could make it difficult to obtain an acquittal. Because he was also infected with the AIDS virus, Hopfinger believed any sentence beyond 5 to 6 years was essentially a life sentence.

Attempting to plea bargain, Wager asked State's Attorney Gary Gelhaus to send Hopfinger to Florida where he faced probation violation charges, thus relieving South Dakota from bearing the brunt of expensive AIDS medical care. Gelhaus refused and mentioned adding a habitual offender charge, enhancing the sentence to life imprisonment. However, if Hopfinger pled guilty to one count of robbery in the first degree and one count of aggravated assault, the State would drop the grand theft count and he would receive two 15–year sentences in the state penitentiary. Wager informed Hopfinger the sentences would run concurrently, making Hopfinger *eligible* for parole in 4½ years, thus potentially avoiding the AIDS life sentence.

Hopfinger also claims that he lacked the mental capacity to make a plea bargain, that his counsel was ineffective and that he only agreed to the plea bargain because Wager advised that he would be *released* in 4½ years.

## DECISION

I.  *Hopfinger was not denied effective assistance of counsel.*

■ To establish ineffective assistance of counsel, a defendant must prove both that counsel's representation fell below an objective standard of reasonableness and that such deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Luna v. Solem,* 411

N.W.2d 656 (S.D.1987). Following *Strickland*, this Court has found prejudice where there exists a reasonable probability that, but for the unprofessional errors of counsel, the result of the proceeding would have been different. *Phyle v. Leapley*, 491 N.W.2d 429 (S.D.1992).

Last year, however, the United States Supreme Court elucidated the *Strickland* analysis holding:

Thus, an analysis focussing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for the counsel's error may grant the defendant a windfall to which the law does not entitle him.

*Lockhart v. Fretwell*, 506 U.S. ——, ——, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993). Ergo, it is not enough for Hopfinger to show, as in *Phyle*, that the verdict would have been different, he must show "that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

■ Although Roettele's version of the events prior to the stabbing changed "like a chameleon," his account of what happened at the hotel was consistent with Hopfinger's story. Thus, evidence of Roettele's character, reputation for truthfulness, and propensity for violence would not have been relevant to Hopfinger's defense.

At the habeas corpus hearing, Hopfinger testified after he and Roettele had engaged in consensual sex, Roettele pursued more sex by shoving him on the bed, but:

I didn't want to [have more sex] and I asked [Roettele] to leave because I was drinking and mixing my medication with it and I was really—I felt I was beginning to lose control of myself, I wasn't thinking right and when he got forceful with me I automatically had flashbacks to the time when I was molested as a younger child and I just reacted in a violent way and I attacked him.

In addition to mixing alcohol and medication that night, Hopfinger further admitted to smoking marijuana. Under SDCL 22-5-5, no act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition.

After the stabbing, Hopfinger admittedly stole Roettele's money, jewelry and car, and was charged with same. This version was the only version heard by the habeas court. Being bound by his own testimony, he cannot now claim the benefit of a more favorable version of the facts. *State v. Jacobson*, 491 N.W.2d 455 (S.D.1992).

Contrary to Wager's testimony, Hopfinger asserts Wager assured him that by plea bargaining to the 15–year sentence, he would only serve 4½ years. At the sentencing, Judge David Gilbertson sentenced Hopfinger to 15 years and questioned him as to his understanding of the plea arrangement. Nothing about the 4½ years was mentioned, yet Hopfinger complains that Wager guaranteed the early release. Not only is this a silly argument, but it conflicts with the very letters he wrote to Judge Gilbertson while incarcerated. One letter specifically requested a 7 to 10 year sentence reduction. We also note that Hopfinger, having spent the previous 11 years in and out of the Florida correctional system, was familiar with the parole system.

Furthermore, although a habitual offender charge was considered by the prosecutor, it was not filed. Therefore, investigation of the constitutionality of prior convictions proved unnecessary here.

Neither Hopfinger's own testimony nor the character evidence he seeks to admit shed new light on the case. Counsel was not ineffective and did not prejudice Hopfinger; rather, Hopfinger received a fair plea bargain with a reliable result. *Lockhart*, 506 U.S. at ——, 113 S.Ct. at 842–43.

II. *Trial court did not err by accepting Hopfinger's plea.*

■ Per *State v. Bolger*, 332 N.W.2d 718 (S.D.1983), this Court will look at the totality of the circumstances in determining if a

guilty plea was made knowingly, voluntarily and intelligently. To overturn an otherwise effective plea due to a mental condition, Hopfinger must show that the mental condition was so debilitating that he was unable to consult with counsel or unable to understand the proceedings. *State v. Lashwood*, 384 N.W.2d 319 (S.D.1986); *Bolger*, 332 N.W.2d at 721. It is the burden of the petitioner to demonstrate that the trial court should not have accepted the guilty plea. *Spirit Track v. State*, 272 N.W.2d 803, 804 (S.D.1978).

 Hopfinger had been under the care of mental health professionals while incarcerated in Florida and was on medication for his depression. Although this raises a red flag for a psychological examination, such is not mandatory. *See Adams v. Leapley*, 489 N.W.2d 381 (S.D.1992). According to Wager, Hopfinger was fully aware of the difference between right and wrong and knew his actions were intentional and wrong. At the sentencing, Hopfinger echoed the same to Judge Gilbertson, who adequately questioned him on the various aspects of the proceedings and possible ramifications of the plea. Medical records from his Florida prison did not indicate that his mental condition was so debilitating as to meet the *Bolger* standard. *Lashwood*, 384 N.W.2d at 321; *Bolger*, 332 N.W.2d at 721. Nor does his "mere ingestion of medication render him per se incompetent to enter a plea of guilty." *Bolger*, 332 N.W.2d at 721. In light of these facts, Judge Gilbertson did not err in accepting the plea.

Affirmed.

MILLER, C.J., and WUEST, SABERS and AMUNDSON, JJ., concur.