Lavern Charles FAST HORSE,
Petitioner and Appellant,

v.

Walter LEAPLEY, Warden of the South
Dakota State Penitentiary, Appellee.

18518.

Supreme Court of South Dakota.

Considered on Briefs May 25, 1994.

Decided Aug. 17, 1994.

Marya J. Vrooman Rogers of Finch, Bettmann and Maks, P.C., Rapid City, for petitioner and appellant.

Mark Barnett, Atty. Gen. and Scott Bogue, Asst. Atty. Gen., Pierre, for appellee.

HENDERSON, Justice.

*PROCEDURAL HISTORY/ISSUE*

In *State v. Fast Horse,* 490 N.W.2d 496 (S.D.1992), this Court affirmed the conviction of Lavern Charles Fast Horse for embezzlement of property received in trust. On September 9, 1993, Writ of Habeas Corpus was denied. However, a Certificate for Probable Cause was thereafter granted. Fast Horse appeals the denial of the writ on this issue:

> Was Fast Horse denied effective assistance of counsel by his trial attorney's failure to call certain witnesses in his defense or by failing to introduce evidence that would have impeached a State witness' credibility?

We affirm.

*FACTS*

Fast Horse received a six-year prison sentence for the embezzlement of a camcorder from Telescan Satellite and Pro Video (Telescan) of Rapid City in January of 1991. Although Fast Horse was not an employee of Telescan, business owner Jeff Dale permitted him to take a camcorder to Oglala Sioux Tribal officials on the Pine Ridge Reservation who were looking to buy a camcorder. Dale offered to pay a small commission should Fast Horse make a sale. Fast Horse's sales effort proved unsuccessful. Immediately thereafter, using tickets he charged to Telescan, Fast Horse and his girlfriend, Patricia Swallow—with the camcorder in tote—flew to California for alleged acting opportunities. In the meantime, Dale was making calls to the reservation trying to locate his property.

Although the camcorder was never recovered, Fast Horse testified that he believed it had been seized by California law enforcement from his hotel room. It had not. However, authorities did find a satellite tracking system in his room, another item which Dale had reported stolen.

Public Defender Michael Stonefield (Stonefield) was appointed to represent Fast Horse. In the course of defending his client, Stonefield interviewed potential witnesses, investigated leads and counselled Fast Horse. To protect his client, Stonefield obtained a motion in limine to prevent evidence of the tracking system from being introduced at trial. Fast Horse now claims that Dale mailed the system to him in California.

Against the advice of his attorney, and following a cautionary statement from the trial court, Fast Horse testified in his own defense. Apparently he did more harm than good as he repeatedly contradicted himself, prompting this Court to comment:

> Nevertheless, it is doubtless Fast Horse's convoluted, twisted and inconsistent explanations as to why he took the camcorder to California did far more to assure his conviction than any erroneous instruction on flight.

*Fast Horse,* 490 N.W.2d at 502. His story was hardly credible. Fast Horse's defense then and now is that he had permission to take the camcorder. He contends that had Stonefield called certain witnesses to testify, his story would have been verified.

At the habeas hearing, Stonefield justified his representation and testified that his client had given him inconsistent versions of the events surrounding the camcorder. The record reveals that Fast Horse was not honest with his attorney. Of the eight potential witnesses Fast Horse desired, three *did* testify, three had no relevant testimony, and one attacked his credibility. Only one witness offered any real semblance of favorable testimony. The habeas court concluded that any favorable testimony or evidence Stonefield failed to obtain would not have been enough to offset the evidence against Fast Horse, let alone change the reliability of the jury's verdict.

## DECISION

The essence of this appeal can be summed up by a letter Vicki Schantlos (Vicki) mailed to the Rapid City Police. Fast Horse began a relationship with her in California shortly after Patricia Swallow returned to South Dakota. Vicki's message stated that Fast Horse scammed her out of thousands of dollars, including $1,200.00 for the airline tickets for Fast Horse's flight to California and $800.00 for hotel bills he had neglected to pay. She made no reference to having paid for the camcorder. Fast Horse asserts that Stonefield's failure to call Vicki to testify as a *favorable* witness constitutes ineffective assistance of counsel.

■ In reviewing the denial of a writ of habeas corpus, our review begins with the presumption that an attorney is competent until a showing to the contrary is made; hence, the petitioner carries a heavy burden in establishing ineffective assistance of counsel. *United States v. Valenzuela*, 521 F.2d 414 (8th Cir.1975), *cert. denied*, 424 U.S. 916, 96 S.Ct. 1117, 47 L.Ed.2d 321 (1976); *State v. Walker*, 287 N.W.2d 705, 706 (S.D.1980). As such, effective counsel is not always equated with successful counsel. *State v. McBride*, 296 N.W.2d 551, 554 (S.D.1980). Further, we will not reverse the habeas court's findings unless they are clearly erroneous. *McCafferty v. Solem*, 449 N.W.2d 590, 592 (S.D.1989); *Satter v. Solem*, 422 N.W.2d 425 (S.D.1988).

■ To establish ineffective assistance of counsel, a defendant must prove (1) that counsel's representation fell below an objective standard of reasonableness and (2) that such deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hopfinger v. Leapley*, 511 N.W.2d 845 (S.D.1994). Relying on *Strickland*, *Woods v. Solem*, 405 N.W.2d 59, 61 (S.D.1987), held that prejudice exists when there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding would have been different. It is not enough for the petitioner to show that the verdict would have been different, he must show "that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*,

466 U.S. at 687, 104 S.Ct. at 2064; *Hopfinger*, 511 N.W.2d at 847.

At the habeas hearing, Fast Horse contended that his counsel erred by not calling the following witnesses: Dale, Patricia, Vicki, Harold Salway, Raymond High Eagle, Blaine "Chip" Campbell, Kent Antenson, and Peggy Poppe Basham. Inconsistency continues to run rampant again for Fast Horse—Dale, Patricia, and Salway *did* testify at trial. As his accuser, Dale could hardly be expected to provide favorable testimony. Patricia thought the camcorder was a gift Fast Horse had purchased for his son. Salway's testimony was, in fact, detrimental to Fast Horse's credibility claims. Fast Horse admitted at the habeas trial, that Dale, Patricia, and Salway did provide what favorable testimony he expected from them. High Eagle, testifying at the habeas hearing, had no information at all relevant to the issues presented at trial. On appeal, Fast Horse has narrowed his list of erroneously missed witnesses to Basham, Antenson, Campbell and Vicki.

### Peggy Poppe Basham

In January of 1991, Fast Horse called Professional Travel in Rapid City to purchase two "one-way" airline tickets to Los Angeles, California for himself and Patricia. He told Basham, manager of Professional Travel, that he worked for Telescan and wished to charge the tickets to the business. Basham called Telescan and asked for the manager to verify Fast Horse's employment and permission to charge the tickets. Someone identifying himself over the phone as "Jeff Dale" authorized the charge. When he later received a bill from Basham, Dale denied receiving the phone call. Fast Horse, who was never employed by Telescan, fails to explain why Dale, a man he barely knew, would agree to cover one-way airline transportation to California for him *and his girlfriend.*

■ We agree with the habeas court that Basham's testimony may have been relevant concerning Dale's credibility. However, we also agree that failure to call Basham does not result in deficient counsel. Originally, Fast Horse was also charged with theft of the tickets, but the prosecutor opted not to pursue the matter. Dale eventually paid for the tickets, apparently after Vicki·Schantlos,

according to her letter, reimbursed him for Fast Horse's airline expenses. Although Basham's testimony could be offered to undermine Dale's credibility, it offers little to repair Fast Horse's lack of same. As the habeas court has found, based upon the overwhelming evidence presented against Fast Horse, there is not a reasonable probability that the result of the trial would have been different had Basham testified. *Phyle v. Leapley*, 491 N.W.2d 429 (S.D.1992). We are not persuaded to upset this factual finding. *Ashker v. Solem*, 457 N.W.2d 473, 476 (S.D. 1990).

### Kent Antenson & Blaine Campbell

Fast Horse asserts that when Basham called Dale, he and one of the Telescan employees (he could not recall which one) overheard the content of the conversation and could confirm that Dale had spoken to Basham. Because Stonefield did not follow this lead, Fast Horse asserts that he lost an opportunity to impeach Dale's credibility. However, Antenson and Campbell, Telescan's only employees at the time of the alleged phone conversation, did not recall any such phone call.

■ When the ticket theft charges were dropped, Stonefield felt he had no reason to pursue that line of inquiry. Recall, Stonefield testified that his client's story was wrought with inconsistencies. Stonefield also found it difficult to pursue every lead in Fast Horse's ever-changing tale. Although there was opportunity to impeach Dale, there was also a greater opportunity to make Fast Horse look guilty of obtaining the tickets by fraud. Fast Horse has provided no witnesses to corroborate his claim that Dale authorized the tickets. The habeas court noted, "Tracking down potential witnesses who may or may not have recalled hearing part or all of that one side of that phone conversation, it's too speculative." We agree. As Antenson and Campbell could not confirm the phone call, the absence of their testimony on the matter had no effect on the outcome of the trial. *Roden v. Solem*, 431 N.W.2d 665, 670 (S.D.1988); *State v. Kidd*, 286 N.W.2d 120 (S.D.1979).

### Vicki Schantlos

After Patricia returned to South Dakota, Fast Horse allegedly began dating Vicki. However, in a letter Vicki sent to the Rapid City Police, she complained that Fast Horse bilked her out of money and left her emotionally and financially distraught. Overall, the letter painted a poor picture of the petitioner. She provided a list of her losses, which included covering a hotel bill he had skipped out on and $1,200.00 in airfare. Despite these statements, Fast Horse put an innocent gloss on his relationship with Vicki, claiming that Vicki paid Dale for the tickets *and the camcorder.* On the contrary, the letter makes no mention of payment for the camcorder. Regardless of the fact that Fast Horse conceded this at the habeas hearing, his brief repeatedly claims that the letter confirms that Vicki paid for the camcorder.

■ Thus, he also asserts that the *$1,200.00* included *both* the tickets and the camcorder. Simple arithmetic says otherwise. A camcorder valued at $1,100.00 plus $962.00 in airfare still equals embezzlement under these facts. Nevertheless, Fast Horse maintains that Vicki would have provided favorable testimony. In the alternative, he believed that the letter should have been admitted into evidence. We agree with the habeas court's observation that placing Vicki before a jury probably would have given rise to ineffective counsel; at a minimum, it would have been highly damaging. Stonefield did his client a favor by keeping the letter and Vicki from the jury. *Walker*, 287 N.W.2d at 707.

### Satellite Tracking System

Among the items seized from Fast Horse's hotel room by California authorities was a satellite tracking system reportedly stolen from Telescan. Fast Horse justified possession asserting that Dale had mailed the item to him. State sought to introduce Fast Horse's possession of the tracking system as proof that he had stolen other items from Telescan. To prevent cumulative prejudice against his client, Stonefield wisely filed a motion in limine to prohibit State from mentioning other items found in the hotel room.

The trial court granted the motion concerning the tracking system only. Although Fast Horse does not contend that this trial tactic was in error, he does complain that Stonefield failed to investigate his claim that Dale had mailed the tracking system to him in California.

"The reasonableness of a decision not to investigate is to be judged according to the circumstances of each case with great deference given to the attorney's decision." *Beans v. Black,* 757 F.2d 933, 936 (8th Cir. 1985) (citing *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). At the habeas hearing, Stonefield acknowledged the plausibility of Fast Horse's theory that, if they could prove Dale mailed the tracking system, such would tend to discredit Dale's claim that Fast Horse had stolen the camcorder. Based on Fast Horse's fluctuating stories and Dale's claim that the tracking system also was stolen, Stonefield opted to prohibit the tracking system evidence rather than risk its prejudicial effect. It was a trial tactic.

■■■ "A difference of trial tactics does not amount to ineffective assistance of counsel." *People v. Nickson,* 120 Mich.App. 681, 327 N.W.2d 333 (1982). When reviewing trial counsel's performance, "it is not our function to second guess the decisions of experienced trial attorneys regarding matters of tactics." *Roden,* 431 N.W.2d at 667 (quoting *Walker,* 287 N.W.2d at 707). There is a strong presumption that counsel was competent. *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1986); *Phyle,* 491 N.W.2d at 432. So, although Stonefield's strategy may appear unwise to some, it may just as easily appear sound to others. *Myrick v. Maschner,* 799 F.2d 642, 647 (10th Cir.1986). Counsel's representation did not fall below the objective standard of reasonableness set forth by *Strickland.* The result of the proceeding was neither fundamentally unfair nor unreliable. *Lockhart v. Fretwell,* 506 U.S. ——, ——–——, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180 (1993).

In Fast Horse's chronicle of the camcorder, he testified that he wanted to purchase the camcorder, but he offered it to Joann Thunderhawk so she could purchase it for the Oglala Sioux Tribe. When the Tribe did not buy it, he claims he offered it to Harold Salway, who denies Fast Horse ever contacted him about the camcorder. Although Fast Horse wanted to buy it for *his* son, he also testified that he gave it to *Patricia's* son for Christmas. Patricia's son stayed behind in South Dakota, but the alleged "Christmas gift" went with Fast Horse to California. Patricia, unaware of this claimed gift to her child, believed that the camcorder was for Fast Horse's child, who was also back in South Dakota. In the end, Fast Horse wants us to believe that his new girlfriend, Vicki, more than a month after Christmas, paid for his ex-girlfriend's son's gift, a camcorder that has never been recovered.

As noted above, Fast Horse could not keep his story straight concerning the camcorder. He also had trouble with the simple question of occupation. He claimed he was with public relations with the Tribe; that representation was false. At the same time, he said he was unemployed. He also testified that he had just left a job with a television station in North Dakota.* He would not even concede the undisputed fact that his airline tickets were "one way." His self-destructive testimony did not survive the jury's critique. Additional alleged favorable testimony does not establish any reasonable probability that the jury would have obtained a different result. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

As the habeas court concluded, "Any oversight on his part is not the serious oversight that the first prong [of Strickland] requires or that would have constituted the deficient performance such as to change the verdict." We agree. Stonefield exercised his good faith judgment thereon. On direct appeal, this Court concluded that "we are convinced . . . the jury would have returned a guilty verdict." The same holds true again.

Affirmed.

---

* At the habeas hearing, Raymond High Eagle presented a job application that Fast Horse filed with the Job Partnership Training Act (JTPA) on December 4, 1990. It revealed that on November 3, 1990, Fast Horse was in prison in North Dakota. The previous employment section did not list the television station or the Tribe.

MILLER, C.J., and WUEST and AMUNDSON, JJ., concur.

SABERS, J., concurs in result.

SABERS, Justice (concurring in result).

I concur in result but I do not accept the majority's position that defense counsel's performance was adequate. I think it was deficient in several respects, including the

1) Failure to call Peggy Poppe Basham;

2) Failure to investigate Fast Horse's claim that Dale mailed him the satellite tracking system in California;

3) Failure to talk to and identify an employee who overheard a phone conversation between Dale and Peggy Poppe Basham[.]

The fact that a defendant is less than honest with his own lawyer does not excuse inadequate investigation or performance. In fact, in some cases, it may increase one's obligation of professional responsibility.

However, under *Strickland v. Washington,* the defendant must also show that counsel's deficient performance prejudiced the defense. 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. I am not convinced that the second prong of the *Strickland v. Washington* test has been satisfied and, therefore, I concur in result.