1998 SD 77

**Anthony SIERS, Petitioner and Appellee,**

v.

**Joseph CLASS, Warden of the South Dakota State Penitentiary, Respondent and Appellant.**

**No. 20302.**

Supreme Court of South Dakota.

Considered on Briefs April 29, 1998.

Decided July 8, 1998.

Timothy J. Rensch, Rapid City, for petitioner and appellee.

Mark Barnett, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, for respondent and appellant.

GILBERTSON, Justice.

[¶ 1.] The State of South Dakota (State) appeals the grant of Anthony Siers' (Siers) application for Writ of Habeas Corpus on the ground that he was denied effective assistance of counsel during his trial on one count of second degree rape.  We reverse.

## PROCEDURE

[¶ 2.] On October 4, 1991, a Pennington County jury found Siers guilty of the second degree rape of S.B. during the early morning hours of July 5, 1991. Siers was also found to be a habitual offender and was sentenced to serve fifteen years in the South Dakota State Penitentiary. His conviction was summarily affirmed on direct appeal. *State v. Siers*, 494 N.W.2d 390 (S.D.1992). In October, 1995, Siers filed an amended·petition for habeas corpus relief alleging his trial counsel was ineffective for not pursuing two possible alibi witnesses. Evidentiary hearings were held in February of· 1996 .and 1997[1] after which Siers was granted habeas relief.

## FACTS

[¶ 3.] The facts giving rise to this appeal began on July 4, 1991, between 9:00 and 10:00 p.m. when S.B., a Purdue University sophomore working a summer job with the Forest Service, went to the Black Hills Heritage Festival (festival) to meet some friends. Soon thereafter, S.B. was approached by a man, whom she later identified as Siers, asking for a light for his cigarette. The man introduced himself as "Tony" and she told him her first name. S.B. alleged she then became uncomfortable when Siers continued to follow her around the festival while she was searching for her friends. S.B. left the festival for a friend's house because she "didn't want [Siers] to follow [her] home" and claimed Siers continued following her on a bicycle and tried to persuade her to enter secluded areas. S.B. testified the man further identified himself as "Tony Siers." S.B. then gave Siers a name other than the one she originally gave him. Realizing S.B. had given him two different names, Siers replied, "Well, my name isn't Tony either. It's Tom Janis." Siers also tried to persuade .S.B. to go to his home on "Silver Street." S.B. declined.

[¶ 4.] S.B. testified that Siers finally talked her into taking a short cut through a field. While walking across this dark field, S.B. claimed Siers pushed her to the ground and a violent fifteen-minute struggle ensued which ended when Siers pinned her to the ground, attempted to choke, and threatened to "beat the shit" out of her if she did not quit screaming. S.B. testified Siers raped her vaginally and orally, that she feared for her life, and attempted to calm Siers during the rape by submitting to him. According to S.B., Siers had difficulty trying to penetrate her, which angered Siers and caused S.B. great physical pain. S.B. tried to appease Siers and alleviate the pain by asking Siers to perform oral sex. After this assault, trying to maintain his trust, she then asked Siers to take her back to his house on Silver Street. The two began walking and while Siers was outside, S.B. entered a convenience store and asked to use the telephone, intending to call a friend to take her to the hospital. The convenience store clerk on duty at the time, Juanita Larvie (Larvie), overheard S.B.'s telephone conversation requesting a ride ·to the hospital. S.B. then told Larvie she had just been raped. Larvie suggested that S.B. telephone the police. S.B. called the police and became hysterical, blurting out two names, Tony Siers and Tom Janis, along with her social security number.

[¶ 5.] The police arrived and S.B. led them to the scene of the rape. S.B. was then taken to a hospital for a rape examination. S.B.'s chest and back were scratched and her undergarments were torn. A pelvic examination was performed during which injuries to the lining of S.B.'s vagina and a one-inch tear in S.B.'s hymen were detected. The examining physician testified the nature of S.B.'s injuries indicated S.B. had not been sexually active prior to the night of the rape. Semen samples were not obtained and S.B. was unsure whether Siers had ejaculated.

[¶ 6.] A Rapid City Police Department detective visited the address on Silver Street that had been given to S.B. by Siers. This was the residence of Siers' mother. Siers was not present. Siers had been living part-time with his mother and part-time with his sister, Joanna Siers (Joanna). Next the de-

---

1. This delay was due to a lack of activity by Siers' habeas counsel as well as scheduling difficulties of several Seventh Judicial Circuit judges. The initial habeas judge retired during the proceedings. The replacement judge then recused himself. Another judge was assigned in November, 1996. However, the case was again reassigned in March, 1997.

tective sought Siers at Joanna's house. Although Joanna was co)perative with the officer, significantly she (did not mention to this officer what was to become her testimony at the habeas hearing, that Siers was at her home during the time of the rape. Siers was ultimately located at the Silver Street residence. Siers was also cooperative with police. He denied knowing or seeing S.B. much less raping her. Siers told the detective he had been at a powwow being held near the festival. Siers did not claim he was at his sister Joanna's apartment with her and her boyfriend Forest Bordeaux (Forest) at the time S.B. was raped.

[¶ 7.] S.B. participated in two photographic lineups. The first lineup did not contain a picture of Siers, but did contain a picture of Tom Janis, the second name allegedly given by Siers to S.B. the night of the rape. S.B. identified Siers as the rapist in the second of the photographic lineups.[2] Larvie, the convenience store clerk, identified Siers as the man outside of the store when S.B. came in to use the telephone.[3] Additional facts will be discussed as necessary to address the issue presented:

## ISSUE PRESENTED

[¶ 8.] **Whether Siers' counsel was ineffective for failing to investigate two possible alibi witnesses.**

### STANDARD OF REVIEW

■ [¶ 9.] The remedy in a habeas proceeding is in the nature of a collateral attack on a final judgment, therefore, our scope of review is limited. *Black v. Class,* 1997 SD 22, 560 N.W.2d 544. Habeas corpus is not a substitute for direct review. *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191.

Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant;

(2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction.

*Black,* 1997 SD 22 at ¶ 4, 560 N.W.2d at 546 (quoting *St. Cloud v. Leapley,* 521 N.W.2d 118, 121 (S.D.1994) (internal citations omitted)).

■ [¶ 10.] The habeas petitioner has the initial burden to prove by a preponderance of the evidence that he is entitled to relief. *Johnson v. Zerbst,* 304 U.S. 458, 469, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461, 1469 (1938); *Loop,* 1996 SD 107 at ¶ 14, 554 N.W.2d at 191; *Two Eagle v. Leapley,* 522 N.W.2d 765, 768 (S.D.1994). The habeas court's factual findings are given "considerable deference" and we will not reverse these findings unless they are clearly erroneous. *St. Cloud,* 521 N.W.2d at 121; *McCafferty v. Solem,* 449 N.W.2d 590, 592 (S.D.1989), *cert. denied, McCafferty v. Leapley,* 503 U.S. 911, 112 S.Ct. 1277, 117 L.Ed.2d 503 (1992); *Satter v. Solem,* 422 N.W.2d 425 (S.D.1988), *cert. denied,* 490 U.S. 1091, 109 S.Ct. 2432, 104 L.Ed.2d 989 (1989).

■ [¶ 11.] Whether a defendant has received ineffective assistance of counsel presents a mixed question of law and fact. *Lykken v. Class,* 1997 SD 29, 561 N.W.2d 302. In the absence of a clearly erroneous determination, we defer to the habeas court's findings of fact regarding what counsel did or did not do, but we may substitute our own judgment "as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel." *Id.* 1997 SD 29, at ¶ 6, 561 N.W.2d at 304–05 (quoting *Aliberti v. Solem,* 428 N.W.2d 638, 640 (S.D.1988)).

---

**2.** The only difference noted by the habeas court in S.B.'s numerous descriptions of her attacker is that she initially described him as having "light, sandy colored hair." Siers is a Native American with dark hair.

**3.** Larvie initially told investigators that Tom Janis was the man she had seen with S.B. that evening. Larvie did not know but was familiar with and able to recognize both Siers and Janis

because they would occasionally come into the store. Larvie testified that she initially had a recollection problem that was cleared up upon seeing the photographic lineup which contained pictures of both Siers and Janis. Her identification of Siers was unwavering after seeing the lineup and she was positive of her identification of Siers at trial.

## ANALYSIS AND DECISION

■ [¶ 12.] To establish ineffective assistance of counsel, Siers must prove deficient representation and that such deficiency was prejudicial to him. *Lykken,* 1997 SD 29 at ¶ 27, 561 N.W.2d at 308 (citing *Loop,* 1996 SD 107 at ¶ 14, 554 N.W.2d at 191).

> To establish ineffective assistance of counsel, a defendant must prove (1) that counsel's representation fell below an objective standard of reasonableness and (2) that such deficiency prejudiced him. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hopfinger v. Leapley,* 511 N.W.2d 845 (S.D. 1994). Relying on *Strickland, Woods v. Solem,* 405 N.W.2d 59, 61 (S.D.1987), held that prejudice exists when there is a reasonable probability that, but for counsel's unprofessional errors, the proceeding would have been different. It is not enough for the petitioner to show that the verdict would have been different, he must show 'that the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Hopfinger,* 511 N.W.2d at 847.

*Id.* (citing *Fast Horse v. Leapley,* 521 N.W.2d 102, 104 (S.D.1994)).

> Further, [t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance and [t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances and the standard of review is highly deferential. The petitioner must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. (internal quotations and citations omitted).

*Sprik v. Class,* 1997 SD 134, ¶ 23, 572 N.W.2d 824 (quoting *Phyle v. Leapley,* 491 N.W.2d 429, 433 (S.D.1992)).

■ [¶ 13.] At the habeas hearing, Siers testified that prior to trial he informed his attorney, David Wurm (Wurm), of two alibi witnesses, Joanna and her boyfriend Forest who could verify that Siers was at their apartment during the time S.B. was raped.

Wurm testified that prior to trial Siers gave him the names of Loydell, Randy, Joanna, and Forest as possible alibi witnesses *who could place him at the powwow.* Wurm believed Siers may have told him that he slept at Joanna's apartment that night. Wurm admitted at the habeas hearing that during preparation for direct examination, he believed Siers' position "was that he was—he spent the night at the Siers' residence."

[¶ 14.] However, Wurm's recollection of the substance of the testimony Joanna and Forest could provide, as related by Siers during the investigation of the case, was drastically different from what Siers claimed during the habeas proceeding. Wurm testified that Siers merely told him all four witnesses could *place him at the powwow* and Siers did not tell him he was with Joanna and Forest during the time S.B. was raped. Wurm testified the first time ·he became aware of Siers' claim that he was at Joanna's apartment during the rape was nearly four years after Siers' conviction.

[¶ 15.] *Reasonableness of Performance*

[¶ 16.] Under the deficiency prong of *Strickland,* we evaluate the reasonableness of Wurm's performance from his "perspective at the time of the alleged error and in light of all the circumstances. [This] standard of review is highly deferential." *Phyle,* 491 N.W.2d at 433 (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *Strickland, supra* ).

■ [¶ 17.] Under the deficiency prong of *Strickland* we note, "[c]ounsel has a duty to make a reasonable investigation based on the information provided by a defendant, particularly when an alibi is involved." *Hadley v. Groose,* 97 F.3d 1131, 1135 (8th Cir.1996) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d 674); *see also Ransom v. Johnson,* 126 F.3d 716, 723 (5th Cir.1997) ("The reasonableness of investigation decisions depends in part on information supplied by the defendant."). Upon learning the names of the four possible alibi witnesses, Wurm attempted to contact them. Based on his conversation with Siers, Wurm believed these witnesses would state they had seen

Siers at the powwow. Wurm interviewed Loydell and Randy but concluded their testimony would hurt, rather than help, Siers' defense because they were unsure of what time they had seen Siers but could place Siers at the location where S.B. indicated she initially came in contact with him.

[¶ 18.] Wurm testified he attempted to locate Joanna and Forest whom he believed, based on his conversations with Siers, would only be able to verify that Siers was at the powwow during the evening of July 4, 1991. "[I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions." *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d 674. *See also Mitchell v. Class*, 524 N.W.2d 860, 865 (S.D.1994) (defense counsel's failure to investigate, subpoena, or call possible impeachment witness because he did not believe there was "anything that she was going to offer" held not ineffective assistance). After four years, Wurm could not recall specifically whether he asked Siers for help in locating Joanna or Forest, but he testified that he believes he followed his usual practice and requested assistance from his client, who could tell the absent witness to contact Wurm. Siers admitted that Joanna had visited him in jail prior to trial but Siers did not ask her to contact Wurm. Wurm was unsure whether the investigator who had been appointed tried to contact Joanna and Forest because the investigation may have focused on "talking to ... [the] store clerk." Ultimately, Wurm made a personal trip to Joanna's residence to learn what she had to say. Joanna was not home and Wurm believed he followed his usual practice of leaving his business card in the door.

[¶ 19.] Receiving no response from either Joanna or Forest, Wurm subpoenaed them on September 27, 1991. Wurm testified that his usual practice was to attach a note requesting the person receiving the subpoena to contact him prior to trial, but he could not specifically recall whether this was done in these particular instances. Furthermore, Wurm wrote his telephone number on the face of the subpoenas. Forest was not served because he was on the Rosebud Reservation. As such, he was beyond the jurisdiction of the State of South Dakota to serve and enforce a subpoena. *State v. Lufkins*, 381 N.W.2d 263 (S.D.1986). Joanna was personally served with the subpoena on September 30, 1991. However, it is undisputed that Joanna did not contact Wurm prior to trial.

[¶ 20.] What is disputed [4] is whether Joanna complied with the subpoena by presenting herself at Siers' trial. Siers claims Joanna showed up for trial but Wurm failed to call her as a witness. Siers alleges he asked Wurm during the trial "why my alibi witnesses hadn't been called yet" and Wurm responded "leave it up to me." Joanna testified at the habeas hearing that she was present at the trial and alleged she asked Wurm, "well, we've been subpoenaed to witness for my brother, do we get a chance to stand up and tell, you know, and [Wurm] said no, we won't need your testimony."

[¶ 21.] Wurm disagreed and testified he had no contact with Joanna before, during, or after the trial. Wurm did not recall Siers asking about his alibi witnesses during trial even though there were several breaks and Wurm gave Siers a pad of paper so he could communicate with Wurm during the trial. Wurm remembered calling out Joanna's name in the hallway but hearing no response.[5]

4. Although the habeas court did not make specific findings on how it resolved the factual disputes between Siers and Joanna on the one hand and Wurm on the other, a fair reading of the findings shows resolution in favor of Siers. To do otherwise would accept Wurm's version of the facts and end the entire matter at that point as he would have been providing reasonable representation. The Eighth Circuit in *Schlup v. Armontrout*, 941 F.2d 631, 639 (8th Cir.1991), concluded counsel's performance not ineffective in not investigating and calling alibi witnesses after counsel had concluded the testimony could be potentially damaging especially when defendant

"failed to inform counsel of the possibilities of these witnesses with regard to an alibi defense." See also *State v. Miller* 935 S.W.2d 618, 625 (Mo.Ct.App.1996) (noting defense counsel "is not required to be clairvoyant").

5. Wurm admitted that if he had known Joanna was in the courtroom he would have wished to speak with her. Furthermore, depending on what Joanna could have offered, unless she "provided some pretty significant evidence of alibi," then he might not have even called her to the stand. However, if Joanna would have verified Siers' alibi at trial as she did at the habeas

[¶ 22.] Wurm testified he told Siers that he was unable to contact Joanna and Forest. Siers admitted he never told Joanna or Forest that it was important they testify he was with them the night of the rape even though they had visited him in jail. *See Youngblood v. Maggio,* 696 F.2d 407, 410 (5th Cir.1983) (considering defendants failure to inform alibi witness who visited him in jail to contact attorney after attorney made reasonable but unsuccessful effort to locate witness in holding representation not ineffective). Joanna never told anyone that Siers was at her home during the commission of the rape even though she was present while the police searched her home for Siers shortly after the rape. Siers himself testified he never told the police he was with Joanna and Forest during the time the rape was committed. While a lawyer must investigate the obvious, a lawyer is not required to "be a private investigator in order to discern every possible avenue which may hurt or help the client." *House v. Balkcom,* 725 F.2d 608, 617 (11th Cir.1984).

[¶ 23.] The trial court's findings make it clear that the sole basis for the habeas relief was the purported failure to adequately investigate and use Joanna and Forest as alibi witnesses. However, the findings and record do not support this conclusion when analyzed against our recent decision in *Sprik,* 1997 SD 134, 572 N.W.2d 824, and substantial prior authority.[6] In *Sprik,* the defendant was convicted of rape. In his habeas petition he argued his counsel was ineffective for failure to raise an alibi defense as Sprik claimed a "White Eyes" could provide testimony he was with Sprik at another location at the time of the rape. In rejecting Sprik's argument we held:

> Alibi evidence must show that the accused could not have committed the alleged crime, because at the time of its commission he was at a place other than where such offense was committed. *An alibi to be successful must cover the entire time when [appellant's] presence was required*

for accomplishment of the crime.... *[A] purported alibi that leaves it possible for the accused to be the guilty person is no alibi at all.* [Internal quotations and citations omitted].

*Sprik,* 1997 SD 134 at ¶ 40, 572 N.W.2d at 832 (emphasis and bold original) (quoting *Goodroad,* 521 N.W.2d at 440). The relevant findings of fact of the trial court in the timing of the alibi defense are as follows:

38. The time of the rape was established at between 12:30 and 1:15 a.m. in the early morning hours of July 5, 1991.

39. If the victim is to be believed, she was in the company of her rapist two to three hours before the rape occurred.

40. This places [S.B] and the rapist together from at least 11:15 to 1:15 a.m.

41. Siers alibi places him with Joanna Siers and Forrest Bordeaux from 10:30 to 11:45 p.m.

Thus, the latest Joanna and Forest were with Siers was 11:45 p.m., at least 45 minutes prior to the commencement of the rape. As such, under *Sprik,* "[a] purported alibi that leaves it possible for the accused to be the guilty person is no alibi at all." *Id.* (emphasis and citation omitted). Therefore, based upon this record, we hold that Siers was afforded adequate representation within the meaning of the Sixth Amendment.

[¶ 24.] *Prejudice*

■ [¶ 25.] Standing alone, the fact that defense counsel failed to investigate a witness does not by itself satisfy the prejudice prong of *Strickland.* *Hadley,* 97 F.3d at 1135. "To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony 'would have *probably* changed the outcome of the trial.'" *Id.* (quoting *Stewart v. Nix,* 31 F.3d 741, 744 (8th Cir.1994) (emphasis added)). In conducting this analysis, we will consider: "(1) the credibility of all witnesses, including the likely impeachment of the uncalled de-

---

hearing he could not think of a strategic reason not to introduce her testimony.

**6.** *State v. Goodroad,* 521 N.W.2d 433, 440 (S.D. 1994); *State v. Floody,* 481 N.W.2d 242, 248 (S.D.1992); *State v. Cochrun,* 434 N.W.2d 370, 372–73 (S.D.1989); *State v. Nelson,* 310 N.W.2d 777, 780 (S.D.1981).

fense witnesses; (2) the interplay of the uncalled witnesses with the actual defense witnesses called; and (3) the strength of the evidence actually presented by the prosecution." *McCauley–Bey v. Delo*, 97 F.3d 1104, 1106 (8th Cir.1996).

[¶ 26.] We consider the credibility of the uncalled witnesses, Joanna and Forest, as part of determining prejudice. *Id.* While the circuit court made no mention of the credibility of the testimony of either Joanna or Forest, we are not convinced the testimony of Siers' sister and Forest, revealed for the first time nearly four years after Siers' conviction, would have probably changed the outcome of the trial. *Stewart*, 31 F.3d 741. Joanna and Forest were subject to impeachment for bias because of their relationship to Siers. *See Romero v. Tansy*, 46 F.3d 1024, 1030 (10th Cir.1995), *cert. denied*, 515 U.S. 1148, 115 S.Ct. 2591, 132 L.Ed.2d 839 (1995) (concluding "alibi testimony by a defendant's family members is of significantly less exculpatory value than the testimony of an objective witness"). Further, when initially contacted by the detective who was looking for Siers, Joanna failed to inform the officer that Siers could not have been the rapist as he was at her residence during the time of the rape or even that he was there prior to the rape.

■ [¶ 27.] Additionally, "there is no prejudice if, factoring in the uncalled witnesses, the government's case remains overwhelming." *McCauley–Bey*, 97 F.3d at 1106 (citing *Fast Horse v. Class*, 87 F.3d 1026, 1029 (8th Cir.1996) (other citations omitted)). There is no question that a forced rape occurred. The only issue at trial was the identity of the attacker. Siers was identified by both the victim and the convenience store clerk. Prior to the rape, S.B. testified she had been with Siers for more than an hour talking and walking with him so she had an extended time to establish his identity. Furthermore, S.B., visiting South Dakota for the summer, testified that Siers had given her his name and address just prior to the rape. In a town of approximately 50,000 people how else would an out of town summer worker know the name and address of her rapist immediately after such a traumatic event?

This information led to the arrest of Siers. If S.B. and Siers agree on one point, it is that they never met prior to the evening of the rape. How else then, could S.B. have come upon this information?

[¶ 28.] Further, the convenience store clerk, the only witness without a basis to be impeached on a claim of bias, placed S.B. and Siers together at the convenience store immediately after the rape. She had seen Siers before in the convenience store and knew who he was.

[¶ 29.] We conclude Siers has not met his burden of establishing the testimony of his sister, Joanna or Forest would have probably changed the result of the proceeding.

[¶ 30.] We reverse.

[¶ 31.] MILLER, C.J., and KONENKAMP, J., concur.

[¶ 32.] SABERS and AMUNDSON, JJ., dissent.

AMUNDSON, Justice (dissenting).

[¶ 33.] I dissent.

[¶ 34.] This seems like a case of first impression—a habeas appeal where we are reviewing a decision by the circuit court that found ineffective assistance of counsel. The circuit court obviously gave this case serious consideration. A review of the findings show the following:

17. Prior to trial, Mr. Wurm discussed with Siers using consent as a possible defense in light of the fact that Bradbury requested that her assailant perform oral sex upon her. Siers refused to allow Mr. Wurm to pursue this defense, as he adamantly maintained his innocence throughout the proceedings.

\* \* \* \* \* \*

24. Although Mr. Wurm utilized the services of a private investigator, he did not direct the investigator to help him find Joanna Siers or Forrest Bordeaux.

\* \* \* \* \* \*

42. Obviously, if Siers could put forth evidence showing he was somewhere other than with Bradbury on the night of the

rape this could establish that he was not the rapist.

43. Mr. Wurm does not remember speaking to either Joanna Siers or Forrest Bordeaux, and *cannot state any tactical reason whatsoever why he failed to call Joanna to testify at trial.*

\* \* \* \* \* \*

48. Mr. Wurm's performance as defense counsel in failing to even speak with the "main" alibi witnesses, and his failure to investigate any line of defense related to what those witnesses may have said, even though the services of a court appointed investigator were obtained, approved, and authorized, was so deficient that Mr. Wurm was not functioning as counsel guaranteed by the Sixth Amendment of the U.S. Constitution. (emphasis added).

These findings are entitled to " 'considerable deference' " and " 'will not be set aside unless they are clearly erroneous.' " *St. Cloud v. Leapley,* 521 N.W.2d 118, 121 (S.D.1994) (citations omitted).

[¶ 35.] A review of this extensive record certainly supports these findings that Wurm's performance did not measure up to the requirements mandated by the constitution. "Reasonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories. An attorney must make a reasonable investigation in preparing a case or make a reasonable decision not to conduct a particular investigation." *Foster v. Lockhart,* 9 F.3d 722, 726 (8th Cir.1993) (citing *Kenley v. Armontrout,* 937 F.2d 1298, 1304 (8th Cir.), *cert. denied,* 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 450 (1991)). Wurm apparently was of the opinion that the alibi defense was viable. He made somewhat of an effort to contact the witnesses and subpoenaed them. Although the State says he went the extra mile and even got a private investigator appointed in this case, Wurm never even asked the private investigator to contact his client's alibi witnesses. Furthermore, at the time of trial, there was not one witness or any shred of evidence presented by Wurm in his client's defense.

[¶ 36.] Under *Strickland,* the circuit court found Wurm's representation amounted to ineffective assistance of counsel and that the result was not reliable. I agree. The circuit court put it well when it stated:

This Court takes note that the granting of the writ of habeas corpus in this case is a very serious matter and not one to be considered lightly or capriciously. However, this Court, after painstaking consideration of the facts finds that the dictates of the United States Constitution, the foundation upon which our legal system is bedrocked, mandates that a writ of habeas corpus issue and that the Defendant be returned to Pennington County for a new trial.

Now this Court painstakingly struggles to find a reason to reverse a tough and correct decision by the circuit court. However, this record reveals an instance where Siers did not receive what the Constitution affords him—"a fair trial, a trial whose result is reliable." *Loop v. Class,* 1996 SD 107, ¶ 15, 554 N.W.2d 189, 192 (citing *Hopfinger v. Leapley,* 511 N.W.2d 845, 847 (S.D.1994) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693)).

[¶ 37.] I am authorized to state that Justice SABERS joins in this dissent.