1999 SD 97

**Vincent Chad FAST HORSE, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden of the South Dakota State Penitentiary, Appellee.**

**No. 20747.**

Supreme Court of South Dakota.

Considered on Briefs April 26, 1999.

Decided July 28, 1999.

Paul E. Jensen of Jensen and Massa, Winner, for petitioner and appellant.

Mark Barnett, Attorney General, Constance K. Nilles, Assistant Attorney General, Pierre, for appellee.

PER CURIAM.

[¶ 1.] Vincent Fast Horse appeals the denial of his application for habeas corpus relief from his rape conviction. We affirm.

## FACTS

[¶ 2.] On the evening of April 2, 1996, Cecelia Tallman was playing volleyball at a school in Allen, South Dakota and was picked up afterwards by her friend, the victim in this matter. Both women were nineteen years old. The victim was driving a car also occupied by Fast Horse and another man named Chop Mousseaux. The record is unclear as to how the two men came to be in the car with the victim, but they had been drinking and there was more than a case of beer in the car with them.

[¶ 3.] After picking up Tallman, the four drove around town for awhile and then on to Kyle, a community a short distance northwest of Allen. At some point they also picked up B.D., a sixteen year old juvenile male. The car then made its way along country roads toward the town of Martin. Just before reaching Martin, the car became stuck in a large mud puddle. Fast Horse, B.D., Tallman and the victim then set out on foot across open fields toward the lights of Martin. Chop Mousseaux remained in the car because he was drunk and on the verge of passing out.

[¶ 4.] The two men led the two women across several fields and onto a gravel road. As the women reached the road, Fast Horse grabbed the victim and pushed her down into the ditch. Tallman ran off as B.D. chased her and threw full cans of beer at her. After a short distance, B.D. stopped his aggression and agreed to help Tallman get assistance at a nearby farmhouse.

[¶ 5.] At the farmhouse, B.D. and Tallman summoned law enforcement authorities and Deputy Sheriff Russell Waterbury was dispatched from Martin. Waterbury arrived a few minutes later, picked up B.D. and Tallman and sped to the ditch where Fast Horse was holding the victim. As Waterbury pulled up, he saw Fast Horse laying on top of the victim and repeatedly striking at her head with an object later identified as a full can of beer. The victim was resisting, waving her arms and screaming, "help me, help me!" Waterbury got out of his vehicle and ran toward the ditch as Fast Horse stood up. At that point, the victim got up and ran past Waterbury to the patrol car, pulling her clothing on as she ran. As Waterbury reached Fast Horse, Fast Horse pulled his pants up and took a step toward Waterbury. Fearing a threat, Waterbury maced Fast Horse and eventually took him into custody.

[¶ 6.] Although Fast Horse claimed consensual sex with the victim, he was charged with one count of second degree rape, two counts of aggravated assault and as a habitual felony offender. The combined charges carried a maximum penalty of life in the penitentiary. Attorney Pam Ireland was appointed to represent Fast Horse and he ultimately agreed to plead guilty to one count of second degree rape in exchange for a dismissal of all other charges. The charge of second degree rape carried a maximum penalty of twenty-five years in the penitentiary and Fast Horse was sentenced to twenty-five years on February 19, 1997.

[¶ 7.] Fast Horse later sought habeas corpus relief from his rape conviction alleging ineffective assistance of counsel. A hearing was held on March 26, 1998 and the habeas court entered findings of fact, conclusions of law and an order denying the requested relief. Fast Horse appeals.

## ISSUE

[¶ 8.]    **Was Fast Horse denied effective assistance of counsel?**

[¶ 9.] The only matters subject to review in habeas corpus are jurisdiction, sentencing authorization, and whether an incarcerated defendant has been deprived of basic constitutional rights. *See Siers v.*

*Class*, 1998 SD 77, ¶ 9, 581 N.W.2d 491, 494. For purposes of habeas corpus, constitutional violations deprive a trial court of jurisdiction. *Id.* One of the constitutional violations frequently alleged in habeas corpus actions is the infringement of the Sixth Amendment right to the effective assistance of counsel. *See e.g. Sund v. Weber*, 1998 SD 123, ¶ 13, 588 N.W.2d 223, 225; *Siers*, 1998 SD 77 at ¶ 8, 581 N.W.2d at 494; *Lien v. Class*, 1998 SD 7, ¶ 13, 574 N.W.2d 601, 607; *Jones v. Class*, 1998 SD 55, ¶ 18, 578 N.W.2d 154. Fast Horse alleges his counsel was ineffective and that her ineffectiveness led to his entry of a guilty plea to second degree rape.

[¶ 10.] To establish ineffective assistance, the applicant must prove:

> that his trial counsel's performance was deficient. He must show that trial counsel made errors "so serious that counsel was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." Secondly, he must show that the deficient performance "prejudiced the defense" by showing that "counsel's errors were so serious as to deprive the defendant of a fair trial[.]" The reasonableness of trial counsel's action is evaluated from his perspective at the time the alleged error occurred.

*Sund*, 1998 SD 123 at ¶ 13, 588 N.W.2d at 225 (quoting *Garritsen v. Leapley*, 541 N.W.2d 89, 93 (S.D.1995)). Among the grounds often cited in support of claims of ineffective assistance are the failure to interview and inquire of known witnesses and the failure to adequately investigate possible defenses. *See e.g. Sund*, 1998 SD 123 at ¶ 16, 588 N.W.2d at 225; *Siers*, 1998 SD 77 at ¶ 8, 581 N.W.2d at 494; *Lien*, 1998 SD 7 at ¶ 13, 574 N.W.2d at 607. Fast Horse alleges attorney Ireland: failed to investigate the absence of state jurisdiction over the rape; failed to move for a psychiatric examination of Fast Horse; failed to locate and interview the victim; failed to locate and interview B.D.; failed to interview Tallman; failed to interview Chop Mousseaux; failed to interview the doctor who examined the victim; and failed to investigate whether the victim and Tallman had previously made a false rape accusation on the Pine Ridge Reservation.

[¶ 11.] The habeas court found that Ireland had Deputy Waterbury show her on the map where the rape occurred, that she determined the location was on land subject to state jurisdiction and that this investigation of jurisdiction was adequate and reasonable. It found no evidence that failure to move for a psychiatric examination of Fast Horse amounted to ineffective assistance. As for failing to locate and interview the victim, the court found the victim refused to talk to Ireland, but that Ireland had the statement the victim gave to Deputy Waterbury. The court further found that neither Ireland nor the state could locate and interview B.D. and that there was no evidence his testimony would have been beneficial to Fast Horse in any event. The court disposed of the failure to interview Tallman by finding that Tallman refused to talk to Ireland, but that Ireland was able to cross-examine Tallman at the preliminary hearing. The court found nothing ineffective in the failure to interview Chop Mousseaux because he was not at the scene of the rape and there was no showing that an interview with him would have benefited Fast Horse. As for failing to interview the victim's doctor, the court found Fast Horse failed to show additional information on the victim's bruises would have changed the outcome as, "[a] rape can occur without a beating and a beating without a rape." Finally, the court entered findings on the allegation that the victim and Tallman had previously made a false rape accusation and found that Fast Horse could only speculate that further investigation would reveal such information.

[¶ 12.] In addition to these findings, the habeas court found Fast Horse's defense was consensual sex, that it was his word against the victim's and that Fast Horse's demeanor on the stand would have ren-

dered his testimony incredible.[1] Moreover, the habeas court found Fast Horse's testimony would have been controverted by testimony from the victim and others including the deputy sheriff who actually, witnessed the crime.

■ [¶ 13.] Absent a clearly erroneous determination, we must defer to the habeas court's findings on the primary facts regarding what defense counsel did or did not do. *Sund,* 1998 SD 123 at ¶ 14, 588 N.W.2d at 225 (quoting *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191). However, we may substitute our own judgment for that of the habeas court on the question of whether defense counsel's actions or inactions constituted ineffective assistance. *Id.*

■ [¶ 14.] The habeas court's findings are supported by the record and are not clearly erroneous. The habeas court is also supported in its ultimate determination that Ireland provided Fast Horse with effective assistance of counsel. With regard to jurisdiction, Deputy Waterbury used a map to show Ireland the location where he observed Fast Horse struggling with the victim and laying on top of her and Ireland confirmed the location was in an area subject to state jurisdiction. Ireland had no reason to believe Waterbury would testify differently at trial. Thus, Ireland had no reason to pursue additional investigation of the state's jurisdiction because Waterbury's testimony would provide the state with ample evidence to establish jurisdiction. In light of that testimony, Fast Horse's speculation that his intercourse with the victim may have occurred on Indian land was simply inadequate to provide Ireland with any affirmative basis on which to consider contesting jurisdiction.

■ [¶ 15.] Nothing in the record supports the notion that Ireland should have sought a psychiatric examination of Fast Horse. "[T]he Constitution does not require counsel to shop around for more elaborate tests that could be requested on the off chance that they will reveal some exotic disorder." *Walls v. Bowersox,* 151 F.3d 827, 835 (8thCir.1998). There was also no ineffective assistance in Ireland's failure to persist with attempts to interview the victim and Tallman after they refused to talk to her. *See Ward v. Whitley,* 21 F.3d 1355, 1362 (5thCir.1994)(failure to interview potential witnesses reasonable where witnesses were uncooperative in past efforts to elicit information); *United States v. Grimes,* 426 F.2d 706, 708 (5thCir.1970)(no ineffective assistance in refusal to subpoena witness where witness refused to meet with attorney to discuss case); *Snell v. Lockhart,* 791 F.Supp. 1367, 1377 (E.D.Ark.1992)(counsel's failure to interview state's key witness not ineffective assistance where witness refused to speak to counsel); *Neal v. Grammer,* 769 F.Supp. 1523, 1528 (D.Neb.1991)(counsel not ineffective for failing to interview codefendant where codefendant refused to speak with counsel); *U.S. v. Vargas,* 871 F.Supp. 623, 624 (S.D.N.Y.1994)(counsel not ineffective for failure to interview informants where there was no indication

---

1. Fast Horse's testimony at the habeas hearing was astounding. Among his more startling comments were the following:

> Yea, She [*i.e.,* the victim] played off like she was an innocent girl, but coming around a lot of these females I know that they ain't shy. They play off like they're innocent and what not, but they turn out to be the biggest 'hoes.
>
> \*     \*     \*     \*     \*     \*
>
> I told her [*i.e.,* the victim] she was a fat, skanky, ugly looking bitch and she was nothing but a fuck and that was it.

Such testimony clearly supports the habeas court's finding concerning Fast Horse's demeanor.

informants were willing to talk to defense).

[¶ 16.] Ireland's failure to locate B.D., who could not be found by the state, also did not constitute ineffective assistance of counsel as there is no showing B.D. would have provided any information that would have benefited Fast Horse. *See Blair–Bey v. Nix*, 44 F.3d 711, 713 (8thCir.1995)(no ineffective assistance in counsel's failure to locate two witnesses who did not want to be found where defendant failed to show witnesses' testimony, if believed, would have significantly benefited his case); *Williams v. Armontrout*, 912 F.2d 924, 932 (8thCir.1990)(no ineffective assistance in failure to discover potential witness who fled state to avoid arrest and whose whereabouts were unknown where counsel had no reason to believe witness had information helpful or favorable to the defense). Ireland's failure to interview Chop Mousseaux is clearly of no consequence as Mousseaux was not even in the area at the time of the rape. Moreover, as with B.D., there is no showing of any information Mousseaux could have provided that would have helped Fast Horse. *See Hadley v. Groose*, 97 F.3d 1131, 1135 (8thCir.1996)(to establish prejudice from failure to investigate potential witness petitioner must show witness would have testified and probably would have changed the outcome of trial).

[¶ 17.] Ireland's failure to interview the victim's doctor is not ineffective assistance because Ireland knew the substance of the doctor's testimony through the medical report and there is no showing that further information from the doctor about the location and number of the victim's wounds and bruises would have changed the outcome. *See Wing v. Sargent*, 940 F.2d 1189, 1192 (8thCir.1991)(failure to interview witnesses not ineffective assistance where counsel knew in advance the substance of the witnesses' testimony); *Hadley, supra.*

[¶ 18.] Finally, speculation about the existence of a witness and what the witness might say is inadequate to undermine confidence in the outcome and to establish the prejudice prong of a claim of ineffective assistance of counsel. *Goode v. Armontrout*, 925 F.2d 239, 240 (8thCir.1991). Fast Horse's most strident allegation of ineffective assistance is that Ireland failed to investigate his contention that the victim and Ms. Tallman previously made a false rape accusation on the Pine Ridge Reservation. Yet, Ireland was unable to verify this fact in contacts with individuals on the Reservation and the only witness Fast Horse identifies as having any knowledge of the matter was killed in a car accident before the habeas hearing. Fast Horse's speculation about the existence of other witnesses and that such witnesses might verify the commission of prior falsehoods by the victim and Tallman is simply inadequate to undermine confidence in the outcome and to support a claim of ineffective assistance of counsel.

[¶ 19.] Affirmed.

[¶ 20.] MILLER, Chief Justice, and SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, participating.

