2000 SD 19

**Charles Russell RHINES, Petitioner and Appellant,**

v.

**Douglas WEBER, Warden, South Dakota State Penitentiary, Appellee.**

No. 20816.

Supreme Court of South Dakota.

Argued Sept. 16, 1999.

Decided Feb. 9, 2000.

Michael W. Hanson, Sioux Falls, for petitioner and appellant.

Mark Barnett, Attorney General, Craig M. Eichstadt, Deputy Attorney General, Grant Gormley, Gary Campbell and Sherri Sundem Wald, Assistant Attorneys General, Pierre, for appellee.

JAMES W. ANDERSON, Circuit Judge.

[¶ 1.] Charles Russell Rhines (Rhines) appeals from a circuit court judgment denying his application for a writ of habeas corpus. We affirm.

### FACTS AND PROCEDURE

[¶ 2.] A full review of the facts can be found in this Court's previous opinion affirming Rhines' conviction and sentence. *State v. Rhines,* 1996 SD 55, 548 N.W.2d 415, *cert. denied, Rhines v. South Dakota,* 519 U.S. 1013, 117 S.Ct. 522, 136 L.Ed.2d 410 (1996). Only those facts relevant to Rhines' present appeal of the denial of habeas corpus will be reiterated in this opinion.

[¶ 3.] From late 1991 until he was terminated in February 1992, Rhines worked at the Dig 'Em Donut Shop on West Main Street in Rapid City, South Dakota. On March 8, 1992, the body of Donnivan Schaeffer, an employee of Dig 'Em Donuts, was found in the back storeroom of the donut shop. Schaeffer's hands had been bound, and he had been stabbed in the abdomen, upper back, and the back of the neck. Approximately $3,300 in cash, coins, and checks was missing from the store.

[¶ 4.] On July 27, 1992, Rhines was indicted by a Pennington County grand jury in connection with the burglary at Dig Em'

Donuts and the murder of Schaeffer. Trial commenced on January 4, 1993, with Rhines being represented by Wayne Gilbert, Joseph Butler, and Michael Stonefield. On January 22, 1993, the jury found Rhines guilty of premeditated first-degree murder and third-degree burglary.

[¶ 5.] On January 26, 1993, the same jury sentenced Rhines to death by lethal injection for the first-degree murder conviction, having found four aggravating circumstances in connection with Schaeffer's death: (1) the offense was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest under SDCL 23A–27A–1(9); (2) the offense was committed for the purpose of receiving money under SDCL 23A–27A–1(3); (3) the offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture under SDCL 23A–27A–1(6); and (4) the offense was outrageously or wantonly vile, horrible or inhuman in that it involved depravity of the mind under SDCL 23A–27A–1(6).

[¶ 6.] Thereafter, Rhines' trial counsel were appointed to represent him on appeal of his conviction and sentence to this Court. In that appeal, we ruled that the sentencing jury's discretion was not adequately channeled by the "depravity of the mind" aggravating circumstance, as limited by the trial court's instruction. *Rhines,* 1996 SD 55, ¶ 148, 548 N.W.2d at 449. However, we held that "the invalidity of the 'depravity of the mind' circumstance d[id] not so taint the penalty proceedings as to mandate reversal of Rhines' death sentence." *Id.* at ¶ 169, 548 N.W.2d at 453. Accordingly, this Court affirmed Rhines' conviction and death sentence.

[¶ 7.] Subsequently, Rhines filed an application for writ of habeas corpus. The Honorable Merton Tice Jr. denied the application and quashed the writ in a written opinion dated October 8, 1998. Additional facts will be recited herein as they relate to specific issues.

## STANDARD OF REVIEW

■ [¶ 8.] The remedy of a writ of habeas corpus "is in the nature of a collateral attack on a final judgment, therefore, our scope of review is limited." *Black v. Class,* 1997 SD 22, ¶ 4, 560 N.W.2d 544, 546.

> Habeas corpus can be used only to review (1) whether the court had jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases, whether an incarcerated defendant has been deprived of basic constitutional rights. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction.

*Siers v. Class,* 1998 SD 77, ¶ 9, 581 N.W.2d 491, 494 (quoting *Black,* 1997 SD 22, ¶ 4, 560 N.W.2d at 546). Moreover, "[h]abeas corpus is available only where the defendant is imprisoned or restrained of his liberty." *Loop v. Class,* 1996 SD 107, ¶ 11, 554 N.W.2d 189, 191 (quoting *Two Eagle v. Leapley,* 522 N.W.2d 765, 768 (S.D.1994)).

[¶ 9.] We have also stated:

> Habeas corpus is not a substitute for direct review . . . The habeas petitioner has the initial burden to prove by a preponderance of the evidence that he is entitled to relief. The habeas court's factual findings are given 'considerable deference' and we will not reverse these findings unless they are clearly erroneous.

*Siers,* 1998 SD 77, ¶¶ 9–10, 581 N.W.2d at 494 (citations omitted).

■ [¶ 10.] In regard to ineffective assistance of counsel claims, the following standard applies:

> Whether a defendant has received ineffective assistance of counsel is essentially a mixed question of law and fact. In the absence of a clearly erroneous determination by the circuit court, we must defer to its findings on such primary facts regarding what defense counsel did or did not do in preparation for trial and

in ... presentation of the defense at trial. This court, however, may substitute its own judgment for that of the circuit court as to whether defense counsel's actions or inactions constituted ineffective assistance of counsel.

*Loop,* 1996 SD 107, ¶ 11, 554 N.W.2d at 191 (quoting *Aliberti v. Solem,* 428 N.W.2d 638, 640 (S.D.1988)).

## ANALYSIS AND DECISION

### ISSUE ONE

**[¶ 11.] Whether the circuit court erred in denying Rhines' application for writ of habeas corpus based on claims of ineffective assistance of counsel.**

[¶ 12.] The Sixth Amendment "right to counsel is the right to the *effective* assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674, 692 (1984) (emphasis added). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Id.,* 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93.

[¶ 13.] This Court applies a two-prong test to ineffective assistance of counsel claims. In order to meet the burden of proof for a claim of ineffective assistance of counsel, a defendant must prove (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that such deficiency prejudiced the defendant. *Siers,* 1998 SD 77, ¶ 12, 581 N.W.2d at 495; *Sprik v. Class,* 1997 SD 134, ¶ 22, 572 N.W.2d 824, 829; *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

[¶ 14.] In regard to the first prong of this test, an objective standard of reasonableness, counsel's errors must be "so serious that [he or she] was not functioning as the 'counsel' guaranteed ... by the Sixth Amendment." *Garritsen v. Leapley,* 541 N.W.2d 89, 93 (S.D.1995) (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693))). As a result, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. A defendant asking this Court to invoke such scrutiny carries a heavy burden:

> Because of the difficulties inherent in making the evaluation, a court must indulge a *strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance;* that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered *sound trial strategy.*

*Loop,* 1996 SD 107, ¶ 14, 554 N.W.2d at 192 (emphasis added) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95). Moreover, "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Phyle v. Leapley,* 491 N.W.2d 429, 433 (S.D.1992) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 381, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305, 323 (1986)), *overruled on other grounds by Hopfinger v. Leapley,* 511 N.W.2d 845, 847 (S.D.1994).

[¶ 15.] In regard to the second prong of the test, prejudice to the defendant, this Court must focus on whether the result of the proceeding was fundamentally unfair or unreliable, not merely on whether the outcome would have been different. *Siers,* 1998 SD 77, ¶ 12, 581 N.W.2d at 495; *Sprik,* 1997 SD 134, ¶ 22, 572 N.W.2d at 829; *Loop,* 1996 SD 107, ¶ 15, 554 N.W.2d at 192; *Hopfinger,* 511 N.W.2d at 847. The law does not entitle the defendant to have his conviction set aside "solely because the outcome would have been differ-

ent but for the counsel's error." *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993). Rather, "counsel's errors [must be] so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

[¶ 16.] With these principles in mind, we now examine Rhines' claims of ineffective assistance of counsel during his trial and original appeal.[1]

    A.  Whether counsel were ineffective because they did not attempt to suppress Rhines' confession on grounds that it was induced by a false promise and thereby coerced and involuntary.

[¶ 17.] Rhines was arrested in King County, Washington, at approximately 12:45 p.m. on June 19, 1992, for a burglary that occurred in that state. After being read a *Miranda* warning, Rhines asked something to the effect of, "[t]hose two detectives from South Dakota are here, aren't they?" Rhines was asked no further questions by the King County authorities.

[¶ 18.] Detective Steve Allender of the Rapid City Police Department and Pennington County Deputy Sheriff Don Bahr arrived at 6:56 p.m. the same day to interrogate Rhines about the burglary and murder at Dig 'Em Donuts. Detective Allender testified that he advised Rhines of his *Miranda* rights before questioning began. During this questioning, Rhines confessed to burglarizing Dig 'Em Donuts and murdering Schaeffer. At some point in the interrogation Rhines also stated, "I don't deserve anything but a kick in the teeth and the electric chair." In response, Detective Allender observed that South

Dakota had not executed anyone in fifty years.

[¶ 19.] In Rhines' trial and original appeal, his appointed counsel unsuccessfully argued for suppression of Rhines' confession based on an inadequate *Miranda* warning and insufficient waiver of *Miranda* rights.[2] At the habeas corpus hearing, Michael Stonefield, one of Rhines' appointed counsel, testified that Rhines' confession was very damaging in both the guilt and penalty phases of the trial, and the attorneys never discussed ways to suppress the confession beyond the *Miranda* challenge. Stonefield also testified that he now believes the confession could have been challenged on grounds that Detective Allender made some type of implied promise to Rhines that he would not get the death penalty. Additionally, Wayne Gilbert, another of Rhines' appointed counsel, testified that he had some concern about Detective Allender's statements in that they may have suggested to Rhines that the chance of the death penalty was remote.[3]

[¶ 20.] On this habeas appeal, Rhines argues that his statement could have been attacked as involuntary, having been coerced by a false promise by Allender that Rhines would not receive the death penalty. He claims that had counsel made this argument at the suppression hearing, his confession could have been thrown out. *See State v. Smith,* 1998 SD 6, ¶ 7, 573 N.W.2d 515, 517 (involuntary confessions inherently unreliable).

[¶ 21.] However, in applying the two-prong analysis above, it becomes clear that counsels' failure to make this "coercion" argument was not ineffective assistance. First, there is no indication that

1.  We have previously recognized that the same ineffective assistance rules apply to both trial counsel and appellate counsel. *Lykken v. Class,* 1997 SD 29, ¶ 27, 561 N.W.2d 302, 309.

2.  *See Rhines,* 1996 SD 55, ¶¶ 5–37, 548 N.W.2d at 424–29.

3.  Gilbert, unlike Stonefield, testified that trial counsel did talk about suppressing the confession on these grounds, but Gilbert did not know how fully the discussion was developed into a legal argument.

309 N.W.2d at 429.

counsel's representation fell below an objective standard of reasonableness as required by the first prong of the test. *Siers*, 1998 SD 77, ¶ 12, 581 N.W.2d at 495. The test for ineffective assistance is not whether counsel could dream up new trial strategies with the benefit of hindsight. It is whether counsel pursued a sound strategy at the time of the alleged error. *Sprik*, 1997 SD 134, ¶ 23, 572 N.W.2d at 829. At the time counsel were developing strategy for suppressing the statement, it was *entirely reasonable* for them not to pursue a coercion argument based on an alleged false promise by Allender.

[¶ 22.] The reasons for this conclusion are threefold. One, Allender's comment that South Dakota had not executed anyone in fifty years was a true statement and could not be construed as a *false promise* that Rhines would not get the death penalty. Two, there is nothing in the record from Rhines himself indicating that Allender's statement alone induced him to confess. In fact, the only real evidence of this supposed coercion is counsels' supposition at the habeas hearing.

[¶ 23.] Three, a number of factors indicate Rhines' confession was voluntary. Although Allender's statement might have induced Rhines to cooperate, "[t]he question is not whether the ... statements were the cause of the confession but whether those statements were so manipulative or coercive that they deprived [the defendant] of his ability to make an unrestrained, autonomous decision to confess." *Smith*, 1998 SD 6, ¶ 8, 573 N.W.2d at 517. Rhines made incriminating statements prior to Allender ever mentioning South Dakota's recent history with the death penalty.[4]

Additionally, in response to Allender's comment on the lack of recent executions,

Rhines predicted, "There is a first time for everything." Moreover, as we recognized in Rhines' previous appeal, his statements throughout the interview reflected "an individual who [was] aware of the potentially grave legal consequences of his confession." *Rhines*, 1996 SD 55, ¶ 37, 548 N.W.2d at 429. Therefore, Rhines' contention that counsel should have pursued a coercion argument at the suppression hearing is not supported by the evidence, and he has failed to prove that counsel did not pursue a sound trial strategy under the first prong of the ineffective assistance test.

[¶ 24.] Second, in addition to not meeting the first prong of the ineffective assistance test discussed above, Rhines has not shown, under the second prong of the test, that he was prejudiced by the decision to attack the confession solely on *Miranda* grounds. *Siers*, 1998 SD 77, ¶ 12, 581 N.W.2d at 495. Rhines' brief and oral argument are replete with indications that his trial counsel would have pursued the coercion theory if they could do everything over again. What is utterly lacking, however, is any evidence that their decision to solely pursue a *Miranda* argument prejudiced Rhines, that is, deprived him a fair trial.[5] As a result, Rhines has failed to satisfy either prong of the test for ineffective assistance of counsel in regard to his confession, and hence, we affirm the circuit court's decision on this issue.

B. Whether counsel were ineffective because they did not appeal the trial court's refusal to answer the jury's questions on prison life under *Simmons v. South Carolina*.

[¶ 25.] After finding Rhines guilty of first-degree murder, the jury had to choose between the death penalty and life impris-

---

4. Rhines had indicated that he was standing in the donut shop with money in his hand when he heard the door to the shop open, and at that point had nowhere to run. He had also asked, "You can't plead guilty to first-degree murder, can you?" to which Allender had responded, "I don't know."

5. Indeed, Rhines' appellate counsel admitted in oral argument that no prejudice could be shown from trial counsels' decision to pursue only the *Miranda* argument.

onment without parole. During deliberations, the jury sent the court a note with specific questions about life imprisonment without parole, including:

Will Mr. Rhines be allowed to mix with the general inmate population?

Will Mr. Rhines be allowed to discuss, describe or brag about his crime to other inmates, especially new and/or young men jailed for lesser crimes? (ex: drugs, DWI, assault, etc.)

Will Mr. Rhines be allowed to marry or have conjugal visits?

Will Mr. Rhines be allowed to have or attain any of the common joys of life (ex. TV, radio, music, telephone, or hobbies and other activities to distract him from his punishment)?

Will Mr. Rhines be jailed alone or will he have a cell mate?

What sort of free time will Mr. Rhines have (what would his daily routine be)?

[¶ 26.] The court responded, "All the information I can give you is set forth in the jury instructions." The court denied defense counsels' request that the court add, "[Y]ou may not base your decision on speculation or guess work."

[¶ 27.] After the jury returned a sentence of death for first-degree murder, Rhines' trial counsel filed an appeal with this Court. In that appeal, counsel did not raise the trial judge's refusal to answer the jury's specific questions about prison life. Additionally, at oral argument, counsel did not cite *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).[6]

[¶ 28.] In *Simmons,* the sentencing jury was given a choice between imposing the death penalty or "life in prison," and the trial court refused to instruct the jury that "life in prison" did not include the possibility of parole. Additionally, the prosecution argued that the defendant's future dangerousness could be considered by the jury in

fixing a suitable punishment and that a death sentence would "be an act of self-defense." *Id.* at 157, 114 S.Ct. at 2191, 129 L.Ed.2d at 139. In addition, when the jury sent the court a note asking whether a life sentence carried a possibility of parole, the trial judge instructed them that they were not to consider parole eligibility and that life imprisonment was to be understood in its "plain and ordinary" meaning. *Id.* at 160, 114 S.Ct. at 2192, 129 L.Ed.2d at 140.

[¶ 29.] On appeal, the Supreme Court overturned the conviction on due process grounds. The Court held that "where the defendant's future dangerousness is at issue, and state law prohibits the defendant's release on parole, due process requires that the sentencing jury be informed that the defendant is parole ineligible." *Id.* at 156, 114 S.Ct. at 2190, 129 L.Ed.2d at 138.

[¶ 30.] Having put in place this background of the *Simmons* case and the jury's questions regarding prison life at Rhines' sentencing, we now turn to Rhines' ineffective assistance of counsel claim. Rhines argues the trial court should have specifically answered the jury's questions about the "reality of life without parole," and that its refusal to do so was a violation of due process under *Simmons.* Accordingly, he asserts that counsels' failure to make this argument at oral argument on his original appeal was ineffective assistance.

[¶ 31.] However, a closer analysis reveals that counsels' failure to cite *Simmons* at oral argument in the original appeal did not violate an objective standard of reasonableness or prejudice Rhines, as is required by the test for ineffective assistance. *Simmons* is clearly distinguishable from the case at hand.

[¶ 32.] The Court in *Simmons* made it clear that its decision was based on (1) the

**6.** Even though *Simmons* was not decided until after briefs were submitted in Rhines' original appeal, this Court's rules allow a party to present late authorities not available at the time of brief-writing, provided certain procedures are followed. SDCL 15–26A–73.

state putting the defendant's future dangerousness at issue, and (2) the failure of the trial court to tell the jury that "life in prison" meant life without parole. *Id.* at 161–62, 114 S.Ct. at 2193, 129 L.Ed.2d at 141. Neither of these factors were present at Rhines' sentencing.

[¶ 33.] First, the State never told the jury that future dangerousness was a factor for them to consider in sentencing. Rhines indicates that the prosecutor made such argument indirectly. For example, the prosecutor told the jury to consider such things as "the death of an innocent witness," and "the greedy killing of ... [Schaeffer]" when evaluating aggravating circumstances. In addition, he suggested that Rhines knew how to kill with a knife, and that many people in the jury did not know how to kill with a knife. Finally, Rhines contends that the "depravity of the mind" circumstance itself[7] suggested that Rhines would be dangerous in the future.

[¶ 34.] However, the prosecutor's comments in this case do not rise to the level of argument in *Simmons,* in which the prosecutor expressly told the jury that imposing the death penalty would "be an act of self-defense." *Id.* at 157, 114 S.Ct. at 2191, 129 L.Ed.2d at 139. In addition, the facts of *Simmons* do not support the idea that the "depravity·of the mind" circumstance, in and of itself, translates into a statement that Rhines' future dangerousness makes him deserving of the death penalty.

[¶ 35.] Second, even if future dangerousness was somehow made an issue, the jury in Rhines' case was repeatedly told that life imprisonment meant life without pa-

role, which is exactly what is required by *Simmons.* That case did not require the trial court to speculate as to every possible situation which Rhines could encounter while spending the rest of his life in jail.[8] Not only would this require a grotesque extension of *Simmons,* it would force a trial judge to speculate on day-to-day correctional decisions which are entirely within the discretion of the Department of Corrections. Indeed, had the trial judge attempted to answer the jury's questions in this case, he could have said little more than, "It depends," which would have generated even more unanswerable questions from the jury. It is impossible to believe that such a situation was envisioned by the Supreme Court in *Simmons.*

[¶ 36.] Because the State did not put future dangerousness at issue at Rhines' sentencing, and even if it did, the jury was clearly told that life imprisonment did not include a possibility of parole, *Simmons* is clearly distinguishable. As a result, Rhines cannot prove that his counsel violated an objective standard of reasonableness by failing to cite *Simmons* in his original appeal or that this tactical decision prejudiced Rhines with a fundamentally unfair result in that appeal. The circuit court was correct in rejecting this issue.

C. Whether counsel were ineffective because they failed to ask for specific instructions that aggravating circumstances must be considered individually.

[¶ 37.] During the sentencing phase of the trial, the prosecutor began his argument by asking the jury to go to the

---

**7.** This aggravating circumstance provides that "[t]he offense was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of the mind, or an aggravated battery to the victim." SDCL 23A–27A–1(6).

**8.** Rhines relies heavily on isolated language from Justice Souter's concurrence in *Simmons* for the proposition that the trial court should have answered specific questions on prison life: "[W]henever there is a reasonable

likelihood that a juror will misunderstand a sentencing term, a defendant may demand instruction on its meaning, and a death sentence following refusal of such a request should be vacated." *Id.* at 172–73, 114 S.Ct. at 2198, 129 L.Ed.2d at 148 (Souter J, concurring). However, an entire reading of the concurrence indicates that Justice Souter is addressing the sentencing term "life imprisonment," not suggesting that a trial court must specifically define "life without parole."

death penalty verdict form when they began deliberations and to determine whether or not one of the aggravating circumstances had been proven to exist beyond a reasonable doubt. He then proceeded to discuss individual aggravating circumstances. In part of this discussion, he stated:

> Consider this aggravating circumstance, the death of an innocent witness. And when you consider that circumstance, and you consider it just in and of itself; because only one must be proven, based on that circumstance and that circumstance alone, I ask you to return a verdict imposing the sentence of death ... But there is more ... *there is not just one aggravating circumstance in this case, not just one upon which the law justifies the death sentence.* (emphasis added).

[¶ 38.] He later pointed out:

> And on that circumstance alone, that greedy killing of this young man, I would ask you to impose the death penalty ... without even considering his relationship to the first one. But literally what I have talked to you about right now is why, why was Donnivan Schaeffer killed and sometimes in our daily lives we talk about the how and why, and I am going into the how now. *For there is another aggravating circumstance for you to consider, and that's the first one on the sheet.* (emphasis added).

[¶ 39.] Rhines claims that the prosecutor's argument violated South Dakota's capital sentencing scheme. In this state, the jury must find one aggravating circumstance beyond a reasonable doubt to impose the death penalty, but they are always free to choose life imprisonment. SDCL 23A–27A–4 and 23A–27A–5. Because of the prosecutor's statements, ar-

gues Rhines, the jury chose death solely because of the sheer number of aggravating circumstances. He attaches special importance to this argument because the jury was not instructed on how to decide between life imprisonment and death once they found one aggravating circumstance existed beyond a reasonable doubt.[9] Rhines argues that counsel should have objected to the prosecutor's argument and proposed instructions that the number of aggravating circumstances had no impact on what sentence the jury should impose.

[¶ 40.] Once again, these arguments fail to meet the test for ineffective assistance of counsel. First, if indeed the jury was given no guidance on how to make a decision between life imprisonment and death after they found at least one aggravating circumstance,[10] this is clearly permissible under the precedents of this Court and the United States Supreme Court. *Rhines,* 1996 SD 55, ¶¶ 79–82, 548 N.W.2d at 437–38; *Tuilaepa v. California,* 512 U.S. 967, 978–79, 114 S.Ct. 2630, 2638–39, 129 L.Ed.2d 750, 764 (1994); *Zant v. Stephens,* 462 U.S. 862, 875, 103 S.Ct. 2733, 2741–42, 77 L.Ed.2d 235, 248–49 (1983). Therefore, this supposed lack of guidance lends no support to Rhines' ineffective assistance argument.

[¶ 41.] Second, the prosecutor did not encourage the jury to give the number of aggravating circumstances special weight in arriving at a death sentence. The prosecutor began his argument by telling the jury that each individual aggravating circumstance was "so serious and so offensive by just one of those, the law tells you, you are justified in imposing the death penalty, just one." Moreover, it is clear that he argued each aggravating factor separately. The portions of his argument which mention more than one aggravating circumstance are clearly just matters of

---

**9.** South Dakota law permits the sentencer to consider all mitigating circumstances, but imposes no standard of proof on mitigation. SDCL 23A–27A–1 and 23A–27A–2.

**10.** The jury was told that they could consider all mitigating factors and impose a life sentence even without a reason, which implies that they were given some guidance. However, because the law is clear on this point, we need not dwell on this issue.

transition between the different aggravating circumstances. Indeed, the jury would have had difficulty following the argument if he had not used such segues.

[¶ 42.] Third, even if one could interpret the prosecutor's argument as inviting the jury to stack aggravating circumstances, the trial court's instructions adequately guided their deliberations. For example, the jury was instructed that they were not required to impose a death sentence, and they could impose a life sentence for any reason satisfactory to them, or for no reason. In addition, they were informed that *"[e]ach alleged aggravating circumstance,* and the evidence applicable thereto, should be considered separately ... *the existence of any one aggravating circumstance should not control or influence your decision with respect to another alleged aggravating circumstance."* (emphasis added). Finally, they were told, "If you find *one or more* aggravating circumstances to exist, then you may return one of two verdicts as to the penalty in this case," and they were given a choice between life imprisonment without parole or a death sentence. (emphasis added).

[¶ 43.] Therefore, even if the prosecutor's argument could be interpreted as encouraging the jury to give special weight to the sheer number of aggravating factors, the court's instructions adequately guided their deliberations. The fact that the jury found more than one aggravating circumstance did not undermine their verdict.

[¶ 44.] Thus, there is no support for Rhines' argument that the jury imposed a death sentence because of the sheer number of aggravating circumstances. Likewise, he has failed to prove that counsels' failure to object to the prosecutor's argument during sentencing or propose specific instructions either violated an objective standard of reasonableness or prejudiced him with a trial that was fundamentally unfair. The circuit court was correct in denying his ineffective assistance claim on this issue.

*Remaining ineffective assistance claims*

[¶ 45.] Rhines raises several other issues relating to ineffective assistance of counsel in his brief. However, these remaining instances are either conclusions, which are wholly unsupported by the record, or sound trial strategy when judged by the circumstances facing trial counsel at the time of their decisions. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694–95. Therefore, this Court will address the remaining ineffective assistance claims no further than to point out that Rhines has not proven either prong of the ineffective assistance test in regard to these claims. The circuit court's denial of these ineffective assistance issues is affirmed.

## ISSUES TWO AND THREE

[¶ 46.] **Whether this Court was required to conduct detailed harmless error analysis under the Eighth Amendment to the United States Constitution regarding the trial court's instructional error defining depravity of the mind, and whether this error was not harmless if the jury found Rhines more worthy of the death penalty because of the number of aggravating circumstances based on the State's argument at the penalty phase.**

[¶ 47.] In support of its death penalty verdict, the jury cited four separate aggravating circumstances in connection with Schaeffer's death. *Rhines,* 1996 SD 55, ¶ 166, 548 N.W.2d at 452. One of these four circumstances was that the murder was outrageously or wantonly vile, horrible or inhuman in that it involved depravity of the mind. *Id.*

[¶ 48.] In Rhines' original appeal of his conviction and sentence, this Court ruled that the jury's discretion was not adequately channeled by the depravity of the mind aggravating circumstance, as limited by the trial court's instruction. *Id.* at ¶¶ 137–148, 548 N.W.2d at 447–49. As a

result, we held that the depravity of the mind circumstance, as defined by the trial court, was overbroad and vague and hence constitutionally invalid under the Eighth and Fourteenth Amendments. *Id.* at ¶ 166, 548 N.W.2d at 452.

[¶ 49.] However, because the jury found four aggravating circumstances, only one of which was invalid, we analyzed what effect, if any, the invalid "depravity of the mind" circumstance had on Rhines' death sentence. Most of this analysis involved a thorough examination of *Zant,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235. In that case, the Supreme Court held that the invalidity of one aggravating circumstance did not require reversal of a death sentence if certain procedural safeguards were present in a state's capital punishment law. We determined that South Dakota's capital sentencing scheme, which is modeled after the Georgia death penalty statutes at issue in *Zant,* included all the procedural safeguards emphasized in that case. *Rhines,* 1996 SD 55, ¶ 169, 548 N.W.2d at 453. As a result, we ultimately ruled that "the invalidity of the 'depravity of the mind' circumstance d[id] not so taint the penalty proceedings as to mandate reversal of Rhines' death sentence." *Id.*

[¶ 50.] With that background in mind, we turn to two interrelated issues raised by Rhines. First, he claims that this Court erred in not conducting a detailed harmless error analysis in his original appeal after we determined that the "depravity of the mind" circumstance, as limited by the trial court's instruction, was unconstitutional.[11] Second, he claims that the instructional error was not harmless because after the prosecutor's argument in the penalty phase of the trial, the jury imposed the death penalty based on the sheer number of aggravating circumstances. To state this argument another way, Rhines claims that if the jury im-

posed the death sentence solely because there were four aggravating circumstances, and one of the four aggravating circumstances was unconstitutional, then his sentence must be reversed.

▰ [¶ 51.] We first address ·Rhines' argument that this Court was required to, and did not, undertake a specific harmless error analysis in his original appeal. He contends that this Court was required to give a detailed explanation of what the sentencing jury would have done absent the invalid "depravity of the mind" circumstance.

[¶ 52.] Rhines proceeds down two different avenues to arrive at this contention. First, he argues that South Dakota should be considered one of the "weighing" jurisdictions whose capital sentencing schemes require the sentencer to weigh aggravating and mitigating circumstances before arriving at a death sentence. In those weighing capital punishment jurisdictions, before it can uphold a death sentence imposed by a sentencer who considered an invalid aggravating circumstance, the appellate court must undertake either a reweighing of aggravation and mitigation evidence, or a detailed explanation, based on the record, of why the invalid circumstance did not contribute to the sentence obtained. *Sochor v. Florida,* 504 U.S. 527, 532, 112 S.Ct. 2114, 2118, 119 L.Ed.2d 326, 336–37 (1992); *Clemons v. Mississippi,* 494 U.S. 738, 741, 110 S.Ct. 1441, 1444, 108 L.Ed.2d 725, 733 (1990).

▰ [¶ 53.] However, this argument is without merit. This Court has clearly held that South Dakota law does not require the weighing of aggravating circumstances against mitigating factors. Although the jury is free to consider all mitigating circumstances, they need only find one statutory aggravating factor beyond a reasonable doubt to impose the death penalty.

---

11. This harmless error issue was seemingly raised in Rhines' original appeal. *Rhines,* 1996 SD 55, ¶ 167, 548 N.W.2d at 453. However, this Court did not directly address the issue in its previous opinion, so we will dispose of the issue here. *Id.* at ¶¶ 168–169, 548 N.W.2d at 453.

*Rhines,* 1996 SD 55, ¶¶ 78–82, 169, 548 N.W.2d at 437–38, 453. As pointed out above, our analysis in Rhines' original appeal satisfied the requirements of *Zant,* which is all that is required in a non-weighing capital punishment state such as South Dakota. *Id.* at ¶¶ 168–69, 548 N.W.2d at 453.

[¶ 54.] Second, Rhines opines that a detailed harmless error analysis is required even if South Dakota is a non-weighing state. In support of this proposition, he cites *Stringer v. Black,* 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992). In that opinion the Supreme Court stated:

> With respect to the function of a state reviewing court in determining whether the sentence can be upheld despite the use of an improper aggravating factor, the difference between a weighing State and a nonweighing State is not one of 'semantics,' ... but of critical importance. *In a nonweighing State,* so long as the sentencing body finds at least one valid aggravating factor, the fact that it also finds an invalid aggravating factor does not infect the formal process of deciding whether death is an appropriate penalty. Assuming a determination by the state appellate court that the invalid factor would not have made a difference to the jury's determination, there is no constitutional violation resulting from the introduction of the invalid factor in an earlier stage of the proceedings. *But when the sentencing body is told to weigh an invalid factor in its decision, a reviewing court may not assume it would have made no difference if the thumb had been removed from death's side of the scale. When the weighing process itself has been skewed, only constitutional harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.*

503 U.S. at 231–32, 112 S.Ct. at 1137, 117 L.Ed.2d at 379 (emphasis added) (citation omitted).

[¶ 55.] Contrary to Rhines' interpretation, a review of the above-quoted language reveals that a detailed harmless error analysis is not required in a non-weighing state such as South Dakota. After a thorough analysis of South Dakota's capital sentencing scheme according to the factors in *Zant,* we concluded that the "invalidity of the 'depravity of the mind' circumstance d[id] not so taint the penalty proceedings as to mandate reversal of Rhines' death sentence." *Rhines,* 1996 SD 55, ¶ 169, 548 N.W.2d at 453. After the detailed analysis of *Zant,* it was inherent in our conclusion that the "invalid factor would not have made a difference to the jury's determination." *Stringer,* 503 U.S. at 232, 112 S.Ct. at 1137, 117 L.Ed.2d at 379. Therefore, this Court committed no error in its analysis of the effect of the jury's consideration of the invalid "depravity of the mind" aggravating circumstance in Rhines' original appeal.

[¶ 56.] As for his next issue, Rhines argues that his conviction cannot survive harmless error analysis because the prosecutor at his trial suggested that the number of aggravating circumstance carried special weight in the jury's sentencing deliberations. As a result, Rhines contends, the invalidity of one of these aggravating circumstances requires reversal of Rhines' sentence.

[¶ 57.] Rhines' argument here has the same basis as his ineffective assistance of counsel claim discussed above under Issue 1(C). He claims that the prosecutor's argument to the jury in the sentencing phase of his trial urged them to stack aggravating circumstances to arrive at a death sentence. Essentially, Rhines contends that the prosecutor turned his jury into a "weighing" jury.

[¶ 58.] This Court has already rejected the merits of this argument under Issue 1(C). We find that the prosecutor's mention of multiple aggravating factors was merely a matter of transition in his argument, and even if this were not the case,

the court's instructions sufficiently guided the jury's sentencing deliberations. As a result, even if this Court were required to undertake a harmless error analysis as urged by Rhines, his argument on this issue would have no bearing on the Court's decision.

## ISSUES FOUR THROUGH SIXTEEN

[¶ 59.] All remaining issues in Rhines' brief (Issues 4–16) were fully and fairly considered by this Court in his direct appeal. *Rhines,* 1996 SD 55, 548 N.W.2d 415. Therefore, we are bound by the "settled law in South Dakota that issues, which were raised in a direct appeal, are res judicata on a writ of habeas corpus." *Sprik,* 1997 SD 134, ¶ 20, 572 N.W.2d at 828. *See also Loop,* 1996 SD 107, ¶ 24, 554 N.W.2d at 193; *Lodermeier v. Class,* 1996 SD 134, ¶ 24, 555 N.W.2d 618, 626; *Scott v. Class,* 532 N.W.2d 399, 402 (S.D.1995); *St. Cloud v. Leapley,* 521 N.W.2d 118, 129 (S.D.1994). Consequently, these issues are barred by the doctrine of res judicata and will not be considered by this Court in this habeas review.

## CONCLUSION

[¶ 60.] Rhines has failed to meet his burden of proof under our two-prong test for ineffective assistance of counsel. Additionally, this Court did not err by not undertaking a reweighing of aggravating and mitigating factors or a detailed harmless error analysis in Rhines' original appeal because such analysis is not required in a nonweighing jurisdiction such as South Dakota. We also reject Rhines' contention that under such analysis, his conviction must be reversed because the prosecutor's argument at the sentencing phase of his trial encouraged the jury to stack aggravating circumstances.

[¶ 61.] Affirmed.

[¶ 62.] MILLER, Chief Justice, and SABERS, AMUNDSON, and GILBERTSON, Justices, concur.

[¶ 63.] JAMES W. ANDERSON, Circuit Judge, for KONENKAMP, Justice, disqualified.