#24868-rev & rem-JKM

**2009 SD 66**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BRILEY PIPER,                                   Petitioner and Appellant,

    v.

DOUGLAS WEBER, Warden,
South Dakota State Penitentiary,               Respondent and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE JOHN W. BASTIAN
Judge

\* \* \* \*

STEVE MILLER
Sioux Falls, South Dakota

STEVEN R. BINGER of
Binger Law Office                              Attorneys for petitioner
Sioux Falls, South Dakota                      and appellant.

LAWRENCE E. LONG
Attorney General

GARY CAMPBELL
Assistant Attorney General                     Attorneys for respondent
Pierre, South Dakota                           and appellee.

\* \* \* \*

ARGUED ON APRIL 28, 2009

OPINION FILED **07/29/09**

#24868

MEIERHENRY, Justice

[¶1.]　　　　　Briley Piper appeals the circuit court's denial of his writ of habeas corpus.　He contends that he did not validly waive his right to have a jury determine whether to impose the death penalty and that his appellate counsel provided ineffective assistance of counsel in his direct appeal.

## BACKGROUND

[¶2.]　　　　　The facts of this case are available in their entirety in this Court's opinion affirming Piper's conviction and death sentence on direct appeal.　State v. Piper, 2006 SD 1, 709 NW2d 783.　The following facts relate to the issues raised in Piper's request for habeas corpus relief.　Piper, Elijah Page, and Darrell Hoadley kidnapped and murdered Chester Allen Poage on or about March 12 and 13, 2000, for the purpose of stealing from Poage's family home in Spearfish, South Dakota. Piper was charged with first degree premeditated murder, first degree felony murder, kidnapping, first degree robbery, first degree burglary and grand theft.

[¶3.]　　　　　Piper first pleaded not guilty.　He later appeared before the judge to change his plea to guilty to the charges of first degree felony murder, kidnapping, and the remainder of the charges.　The State was not aware of Piper's intent to change his plea but contemporaneously informed the judge that it still intended to seek the death penalty.　The judge then had a discussion on the record with counsel concerning the death penalty phase of the proceedings.　The judge indicated that he was unsure whether the death penalty determination would be made by the court or by a jury when a defendant pleads guilty to first degree murder.　Defense counsel

-1-

for Piper offered their interpretation of the statutes. They believed the statutes required the judge rather than a jury to decide if death should be imposed.

[¶4.]    Following the short discussion with counsel concerning the proper procedure, the judge advised Piper that he had the "right to a jury trial here in Lawrence County by a jury of 12 fair and impartial jurors." The judge further explained that the jury would have to determine whether the penalty should be a life or death sentence and that the verdict would have to be unanimous. Piper indicated that he did not understand the unanimity requirement. In response, the judge explained that by waiving jury sentencing, Piper traded "12 lay people for one judge to make that call." The judge emphasized that by pleading guilty, Piper was waiving his right to have a jury make the death penalty determination. The judge then accepted Piper's guilty plea and set a date for the sentencing hearing. After a three-day hearing, the judge sentenced Piper to death.

[¶5.]    Piper's co-defendant, Page, was also sentenced to death by the same judge. The other co-defendant, Hoadley, maintained his not guilty plea and proceeded to jury trial. The jury returned a guilty verdict but did not impose the death penalty. Because of the discrepancy in sentences of the co-defendants, Piper challenged the proportionality of his death sentence to this Court. The case was remanded for the judge to conduct an intra-case proportionality review. The judge conducted the proportionality review and affirmed his earlier decision to impose the death penalty. Piper appealed his death sentence, and the majority of this Court

affirmed.[*] Subsequently, Piper filed an application for writ of habeas corpus in circuit court. The habeas court denied the application. Piper now appeals the denial of habeas relief and raises two issues: (1) whether his waiver of his right to have a jury determine the death penalty was constitutionally valid, and (2) whether his counsel rendered ineffective assistance in his direct appeal.

## STANDARD OF REVIEW

[¶6.] The United States Supreme Court has said that: "[T]he penalty of death is qualitatively different from a sentence of imprisonment, however long. Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two." Woodson v. North Carolina, 428 US 280, 305, 96 SCt 2978, 2991, 49 LEd2d 944 (1976). "[T]he qualitative difference of death from all other punishments requires a correspondingly greater degree of scrutiny of the capital sentencing determination." California v. Ramos, 463 US 992, 998-99, 103 SCt 3446, 3452, 77 LEd2d 1171 (1983) (citations omitted); see also Piper, 2006 SD 1, ¶75, 709 NW2d at 811 (citations omitted); State v. Page, 2006 SD 2, ¶98, 709 NW2d 739, 771 (citations omitted). This Court has embraced the Supreme Court's recognition that "'death is a different kind of punishment from any other which may be imposed in this country' and that '[t]he penalty of death is qualitatively different from a sentence of imprisonment, however long.'" Page, 2006

---

[*] Piper originally appealed in 2002. This Court requested additional briefing after the United States Supreme Court decided *Ring v. Arizona*, 536 US 584, 122 SCt 2428, 153 LEd2d 556 (2002). Piper's appeal was argued in March of 2004 and decided in January of 2006.

SD 2, ¶98, 709 NW2d at 771 (quoting Lankford v. Idaho, 500 US 110, 125, 125 n21, 111 SCt 1723 n21, 114 LE2d 173 (1991)).

[¶7.]     Habeas corpus proceedings are reviewed under a narrow standard of review. Steichen v. Weber, 2009 SD 4, ¶4, 760 NW2d 381, 386 (citing Erickson v. Weber, 2008 SD 30, ¶17, 748 NW2d 739, 744).

> Habeas corpus can be used only to review (1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights. Habeas corpus is not a remedy to correct irregular procedures, rather, habeas corpus reaches only jurisdictional error. For purposes of habeas corpus, constitutional violations in a criminal case deprive the trial court of jurisdiction. Further, we may not upset the habeas court's findings unless they are clearly erroneous.

Id. (quoting Erickson, 2008 SD 30, ¶17, 748 NW2d at 744). "Habeas corpus review does not substitute for direct review." Id. The applicant for habeas corpus must satisfy the initial burden to prove the need for relief by a preponderance of the evidence. Id.

## ANALYSIS

[¶8.]     Piper's habeas argument is directed at invalid waiver of his right to a jury in the death penalty phase and ineffective assistance of counsel. Piper contends that he was misled by the judge's advice that a jury would have to choose a sentence unanimously. Since we decide this case on the issue of whether Piper validly waived his right to a jury on the death penalty phase, we do not reach his ineffective assistance of counsel claim.

[¶9.]     SDCL 23A-27A governs the capital sentencing procedure in South Dakota. See SDCL 23A-27A-6; SDCL 23A-27A-2. The statutes provide that if a

jury does not unanimously decide to sentence the defendant to death, a life sentence is automatically imposed. SDCL 23A-27A-4; SDCL 23A-27A-5. In pertinent part, SDCL 23A-27A-4 provides: "If an aggravating circumstance is found and a recommendation of death is made, the court shall sentence the defendant to death. *If a sentence of death is not recommended by the jury, the court shall sentence the defendant to life imprisonment.*" SDCL 23A-27A-4 (emphasis added). Our reading of the statute is that the jury has to unanimously agree to impose the death penalty. If the jury cannot agree to a death sentence, an automatic life sentence is imposed. Consequently, if one juror votes against imposing death, the defendant will receive a life sentence.

[¶10.]    South Dakota modeled its capital sentencing scheme after the Georgia death penalty statutes, which the United States Supreme Court determined to be constitutional in *Gregg v. Georgia. See* Rhines v. Weber, 2000 SD 19, ¶49, 608 NW2d 303, 314; *see also* Gregg v. Georgia, 428 US 153, 96 SCt 2909, 49 LEd2d 859 (1976). The Georgia Supreme Court, applying similar statutes, said:

> We interpret [the statutes] to mean . . . in a murder case, after conviction, where only two sentences can be imposed, life imprisonment or death, if the convicting jury is unable to agree on which of those two sentences to impose, the trial judge must impose the lesser, life imprisonment."

Miller v. State, 229 SE2d 376, 377 (Ga 1976); *see also* Zant v. Stephens, 456 US 410, 420, 102 SCt 1856, 1860, 72 LEd2d 222 (1982) (jury must unanimously recommend the death penalty).

[¶11.]    Piper contends that he did not knowingly and voluntarily waive his right to have a jury make the death penalty determination. Piper specifically points

to the judge's failure to clarify that a jury would have to *unanimously* sentence him to death, and that if one juror voted against the death penalty, he would receive a life sentence. The verbatim record of the judge's explanation supports Piper's claim.

[¶12.]     The judge first advised:

> **Judge**:     With respect to Count IA, which is a Class A felony, you not only have a jury trial right as to the charge itself as to the issue of guilt or innocence, but you have the right to a jury to determine whether or not the State has proved one or more aggravating circumstances and then for that jury to decide whether the penalty should be life or death. *The verdict of the jury would have to be unanimous. And even if the jury found that one or more aggravating circumstances existed, I think it is still within their province to sentence you to life imprisonment.*
>         Is that your understanding, [Defense Counsel]?
> **Piper's counsel**: Correct.
> **Judge**:     [Counsel for the State]?
> **State's counsel**:   Yes.
> **Judge**:     Do you understand that, Mr. Piper?
> **Piper**:         I didn't understand the last part.

(Emphasis added). After Piper expressed that he did not understand jury sentencing, the judge advised:

> **Judge**:     Okay. As I understand it, based upon the statutes and the cases so far decided by the Supreme Court of this state concerning the death penalty, that the state of the law is that if you were convicted of either Count I, premeditated murder, or Count IA, felony murder, which is the charge that you intend to plead guilty to today, then we would have a sentencing hearing.
>         You are proposing that I hold the sentencing hearing rather than the jury hold the sentencing hearing. *What you need to understand is that if you have a jury instead of a judge, all 12 jurors must agree on the penalty; and even if the jury found that the State had proved one or more aggravating circumstances - -*
> **Piper's counsel**:   Those are circumstances with which the jury would be justified in giving you the death penalty if they saw necessary. Aggravating circumstances is simply something - - The jury must find that it exists in order to impose the sentence of death. If they don't find that that exists, they can't. And if they do find that it exists, they don't have to, but they can.

> **Judge**: Do you understand that, Mr. Piper?
>
> **Piper**: Yes.
>
> **Judge**: Is there anything you want me to explain in more detail about that?
>
> **Piper**: No.
>
> **Judge**: If I do the sentencing instead of the jury, I still have the same situation. I must find one or more aggravating circumstances to be proved by the evidence, and even if I found those to be proved by the evidence, I could sentence you to life imprisonment rather than to death by lethal injection. Do you understand that?
>
> **Piper**: Yes.
>
> **Judge**: What is significant about what you're doing here today is that if you waive your right to have the jury do the sentencing, you are trading 12 lay people for one judge to make that call. Do you understand that?
>
> **Piper**: Yes.

(Emphasis added). The judge did not clarify further.

[¶13.] The United States Supreme Court has held that a defendant waives several constitutional rights when entering a guilty plea.

> First, is the privilege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. *Second, is the right to trial by jury.* Third, is the right to confront one's accusers. [A court] cannot presume a waiver of these three important federal rights from a silent record.

Boykin v. Alabama, 395 US 238, 243, 89 SCt 1709, 1712, 23 LEd2d 274 (1969) (emphasis added) (internal citations omitted); *see also* State v. Apple, 2008 SD 120, ¶11, 759 NW2d 283, 287 (citing Nachtigall v. Erickson, 85 SD 122, 126-27, 178 NW2d 198, 200 (1970) (applying the *Boykin* rights to South Dakota)). Further, the Supreme Court has considered the right to a jury trial for both parts of bifurcated proceedings, such as death penalty proceedings. The Supreme Court recently noted that "[t]his Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury,

not a judge, and established by a reasonable doubt, not merely by a preponderance of the evidence." Cunningham v. California, 549 US 270, 281, 127 SCt 856, 863-64, 166 LEd2d 856 (2007).

[¶14.]     Since the 1979 reenactment of the South Dakota death penalty statutes, five defendants have been sentenced to death in South Dakota. *See Page*, 2006 SD 2, 709 NW2d 739; *Piper*, 2006 SD 1, 709 NW2d 783; State v. Anderson, 2003 SD 65, 664 NW2d 48; State v. Moeller, 2000 SD 122, 616 NW2d 424; State v. Rhines, 1996 SD 55, 548 NW2d 415. Of the five, only Piper and Page pleaded guilty and were sentenced by the trial court. Thus, Piper's case was the first time this Court addressed whether South Dakota's statutory scheme allowed a jury to determine the death penalty following a guilty plea or whether the statute unconstitutionally required the judge to determine the death penalty.

[¶15.]     On direct appeal, Piper argued that the South Dakota death penalty statutes were unconstitutional. *Piper*, 2006 SD 1, ¶47, 709 NW2d at 803. Piper argued that the statutes did not allow for jury sentencing if the defendant pleaded guilty. *Id.* In *Ring v. Arizona*, the United States Supreme Court determined that "a capital sentencing scheme would be unconstitutional if it prevented a defendant who pleaded guilty from having alleged aggravating circumstances found by a jury." *Id.* ¶48, 709 NW2d at 803 (citing Ring v. Arizona, 536 US 584, 609, 122 SCt 2428, 2443, 153 LEd2d 556 (2002)). The majority of this Court determined that the South Dakota statutes were not unconstitutional because even though the death penalty statute "does not authorize jury sentencing in capital cases following a guilty plea, other statutes provide that right." *Id.* ¶56, 709 NW2d at 806. Although the opinion

-8-

stated that Piper waived his right to a jury trial, the issue of whether Piper

constitutionally waived his right to have a jury decide the death penalty was not

raised on appeal. It had not been raised because Piper's main challenge was that

the statute unconstitutionally did not allow for a jury on the death penalty phase.

On habeas, Piper claims ineffective assistance of appellate counsel for not raising

the voluntariness issue on appeal. Thus, the question, as now framed, of whether

Piper's waiver was knowing and voluntary is squarely before us for the first time.

[¶16.]    We have said that "'the trial court must be able to determine from its

own record that the accused has made a free and intelligent waiver of his

constitutional rights before a guilty plea is accepted.'" *Apple*, 2008 SD 120, ¶10, 759

NW2d at 287 (quoting State v. Sutton, 317 NW2d 414, 416 (SD 1982)). "A judge has

the duty to make sure that a defendant understands the consequences of entering a

guilty plea and the rights the defendant is waiving." *Id.* ¶21, 759 NW2d at 290.

This Court considers the totality of the circumstances in determining whether a

guilty plea is knowing and voluntary. *Id.* ¶14, 759 NW2d at 288. Piper's waiver of

his right to have a jury decide the death penalty stage is also considered under the

totality of the circumstances.

[¶17.]    Central to the totality of the circumstances analysis is the judge's lack

of a clear explanation regarding juror unanimity in the death penalty phase. The

judge did not explain to Piper that if the jury did not unanimously decide to impose

death, then a life sentence would be imposed. The judge only explained that "all 12

jurors must agree on the penalty." Although Piper's attorneys testified in Piper's

habeas hearing that they had fully explained the unanimity requirement, their

explanation alone in this case is not sufficient to find a voluntary waiver. This is especially true in light of the fact that Piper's attorneys advised him that the statute did not allow for a jury trial on the penalty phase after a guilty plea to first degree murder. During Piper's change of plea hearing, defense counsel said: "I'm seizing upon . . . the plain language of that statute: 'In nonjury cases the judge shall . . . ,' so it's our position that upon the acceptance of the plea, we will come before you for a sentence of life or death." Consequently, when Piper entered his guilty plea, he was doing so under counsels' advice that by entering his guilty plea, he was not entitled to a jury on the sentencing phase. The judge's explanation did not clearly dispel that misunderstanding. Nor did the judge's explanation point out that if Piper chose to let the jury decide whether to impose the death penalty, one juror could spare him from death.

[¶18.]     Other courts have held that the failure to fully advise a defendant of the requirement of jury unanimity warrants reversal. *See* Harris v. State, 455 A2d 979, 984 (Md 1983), State v. Martinez, 43 P3d 1042, 1048-49 (NM 2002); Commonwealth v. O'Donnell, 740 A2d 198, 213 (Pa 1999). The Maryland Court of Appeals determined that "[i]t is one thing to be told that the jury would have to be unanimous before imposing death or life imprisonment, but quite another to not being made aware that if, after a reasonable time, the jury is unable to agree, the court shall dismiss the jury and impose a life sentence." *Harris,* 455 A2d at 984. Because of the court's failure to advise the defendant, the court remanded for a new sentencing proceeding. *Id.* The New Mexico Supreme Court held that the defendant's waiver of jury sentencing cannot be knowing and intelligent unless the

defendant is aware of the unanimity requirement. *Martinez*, 43 P3d at 1048-49.

The court determined that the unanimity feature of "jury sentencing is an especially

crucial piece of information for a defendant who faces a potential sentence of death,"

and that this error constituted fundamental error. *Id.* at 1049. The court remanded

for a new sentencing proceeding. *Id.* The Pennsylvania Supreme Court also

determined that "[g]iven the unique role a sentencing jury plays in the penalty

phase of a capital case, it also seems appropriate for any colloquy preceding a trial

court's acceptance of a capital defendant's waiver to a penalty-phase jury to inform

the defendant of the requirement under Pennsylvania law that a penalty-phase jury

render a unanimous verdict." *O'Donnell,* 740 A2d at 213 (internal citation omitted).

 [¶19.]        The fact that one juror has the potential to save a defendant's life

cannot be underplayed. The defendant's plea cannot be considered knowing and

voluntary without a clear explanation and understanding of this concept. The

judge's explanation fell short of the required clarity in this case. The judge

explained as follows: "[t]he verdict of the jury would have to be unanimous. And

even if the jury found that one or more aggravating circumstances existed, I think it

is still within their province to sentence you to life imprisonment." Even if Piper's

lawyers had explained the unanimity requirement to him before he entered his

plea, the judge's explanation, at least, would have been confusing and, at most, in

direct contradiction. Consequently, without an adequate explanation by the judge

that one juror could, in effect, choose life, Piper's waiver of a jury trial on the death

penalty cannot be considered knowing or voluntary. Furthermore, the finality of a

death sentence requires that we accord higher scrutiny to capital sentencing

determinations. *Ramos*, 463 US at 998-99, 103 SCt at 3452 (citation omitted). For this reason, in a death penalty plea, more so than in other pleas, the trial court has the duty to ensure "that the defendant truly understands the charges, the penalties, and the consequences of a guilty plea." *Apple*, 2008 SD 120, ¶21, 759 NW2d at 291.

[¶20.] Piper argues that the remedy for an unconstitutional waiver of his right to jury trial is to invalidate his death sentence and impose a life sentence. Piper cites to SDCL 23A-27A-14 to support this argument. SDCL 23A-27A-14 provides that:

> In the event the death penalty for a Class A felony is held to be unconstitutional by the South Dakota Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death for a Class A felony shall have such person brought before the court, and the court shall sentence such person to life imprisonment.

SDCL 23A-27A-14. We are not, however, holding that the death penalty is unconstitutional. Rather we determine that Piper's waiver of his right to jury trial was unconstitutional.

**CONCLUSION**

[¶21.] We hold that Piper did not validly waive his right to have a jury determine the death penalty. We, therefore, vacate Piper's death sentence and remand for a new sentencing proceeding that affords Piper the right to have a jury decide whether the death penalty should be imposed. *See* Quist v. Leapley, 486 NW2d 265, 268-69 (SD 1992) (invalid plea reversed and remanded); *see also Apple*, 2008 SD 120, ¶¶22-23, 759 NW2d at 291 (reversed to allow defendant to withdraw guilty plea because plea was not intelligent and voluntary,); State v. Goodwin, 2004 SD 75, ¶18, 681 NW2d 847, 854 (invalid guilty plea reversed to allow the defendant

#24868

to withdraw his plea and proceed to trial).  Because we reverse based on the unanimity requirement, we do not reach Piper's other issue of ineffective assistance of counsel.

[¶22.]        GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and SEVERSON, Justices, concur.