#26213-denied-DG

**2012 S.D. 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff,

    v.

ERIC DONALD ROBERT,                                         Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT
SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRADLEY G. ZELL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                        Attorneys for Plaintiff.

MARK KADI
Minnehaha County Public Advocates
Sioux Falls, South Dakota                   Attorneys for Defendant.

RANDAL E. CONNELLY
Rapid City, South Dakota                    Amicus Curiae.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 5, 2012

OPINION FILED   **04/11/12**

#26213

GILBERTSON, Chief Justice

[¶1.] Eric Robert is currently under a sentence of death entered by a circuit court judge of the Second Judicial Circuit. He has not filed an appeal to this Court and the time to do so has expired. Nevertheless, this Court in this case is statutorily mandated by SDCL 23A-27A-12 to consider:

> (1) Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and
>
> (2) Whether the evidence supports the . . . judge's finding of a statutory aggravating circumstance as enumerated in § 23A-27A-1; and
>
> (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

[¶2.] Robert filed a motion with this Court to vacate this Court's orders staying his execution and establishing a briefing schedule. Robert alleges this Court is without jurisdiction to enter these orders. Robert argues that this Court only has such jurisdiction explicitly provided by the Legislature and that the Legislature only requires this Court to review each death sentence. "If the death penalty is imposed, and if the judgment becomes final in the trial court, the sentence shall be reviewed by the South Dakota Supreme Court." SDCL 23A-27A-9. Robert argues, however, that the obligation to review his sentence does not grant this Court additional jurisdiction to stay his execution or enter a briefing schedule.

[¶3.] Robert specifically relies upon the first sentence of SDCL 23A-27A-21. SDCL 23A-27A-21 provides:

> No judge, officer, commission, or board, other than the Governor, may reprieve or suspend the execution of a judgment of death. However, the warden or deputy warden of the penitentiary is

-1-

> authorized so to do in a case and in the manner prescribed in this chapter or as provided in §§ 23A-27A-24 and 23A-27A-28. This section does not apply to a stay of proceedings upon appeal or to the issuance of a writ of habeas corpus, certiorari, or other original remedial writ of the Supreme Court.

Robert focuses on the first sentence of this statute, insisting that only the Governor can delay his execution. Robert argues that the "no judge" language of the statute includes this Court and prohibits it from reprieving or suspending the execution. Regarding the last sentence of this section, Robert argues that because he has not filed a notice of appeal, this matter is not "upon appeal." Therefore, Robert argues the "stay of proceedings" contemplated by this statute is not available.

[¶4.] The plain language of SDCL 23A-27A-21 does not prohibit this Court from granting a stay in the present circumstances. Moreover, if this Court's obligated sentence review is considered "proceedings upon appeal," the statute explicitly contemplates a stay of execution.

[¶5.] The South Dakota Constitution limits this Court's jurisdiction to two categories – appellate jurisdiction as provided by the Legislature and jurisdiction to hear an original or remedial writ. "The Supreme Court shall have such appellate jurisdiction as may be provided by the Legislature, and the Supreme Court or any justice thereof may issue any original or remedial writ which shall then be heard and determined by that court." S.D. Const. art. V, § 5. As Robert points out, no original or remedial writ has been filed in this matter. Rather, the Legislature granted this Court jurisdiction over this matter by mandating that it review Robert's sentence. According to the South Dakota Constitution, the Legislature can provide this Court only with appellate jurisdiction. Therefore, this mandatory

sentence review per SDCL 23A-27A-12 is necessarily an exercise of this Court's appellate jurisdiction.

[¶6.] Circuit courts, not this Court, have original jurisdiction over "all cases." "The circuit courts have original jurisdiction in all cases except as to any limited original jurisdiction granted to other courts by the Legislature. The circuit courts and judges thereof have the power to issue, hear and determine all original and remedial writs." S.D. Const. art. V, § 5. This Court's legislatively mandated sentence review is an exercise of appellate, not original, jurisdiction. Even though no notice of appeal has been filed, this proceeding is an exercise of appellate jurisdiction to review a lower court's decision – the definition of an appeal.

[¶7.] An appeal is "a proceeding undertaken to have a decision reconsidered by bringing it to a higher authority; esp., the submission of a lower court's or agency's decision to a higher court for review and possible reversal." *Black's Law Dictionary* 105 (8th ed. 2004). This Court's mandatory sentence review fits this definition precisely. As Robert points out, when the defendant does not raise additional issues by filing a notice of appeal, this Court's review of the circuit court's sentence is limited by statute. *See* SDCL 23A-27A-12. However, it is still the submission of a lower court's decision to a higher court for review and possible reversal. Should this Court so determine, it could set aside Robert's death sentence and remand the matter for further sentencing proceedings. *Id. Cf. Piper v. Weber*, 2009 S.D. 66, 771 N.W.2d 352. While it is true that this proceeding was not initiated by Robert filing a notice of appeal, it is an exercise of this Court's appellate jurisdiction to review the decision of a lower court – a proceeding upon appeal. As

such, the exception to the prohibition on delaying execution applies. SDCL 23A-27A-21 ("This section does not apply to a stay of proceedings upon appeal.").[1]

[¶8.]        Further, the Legislature's use of "judge" in SDCL 23A-27A-21 reinforces the conclusion that this Court was not included in the prohibition against delaying an execution. The reading of SDCL 23A-27A-21 urged by Robert requires this Court's inclusion in the phrase "no judge." The Legislature clearly intended "no judge" to refer to a judge of a circuit court.[2] This Court is comprised of justices, not judges. S.D. Const. art. V, § 2 ("The Supreme Court is the highest court of the state. It consists of a chief justice and four associate justices."). "Judges" preside over circuit courts. *Id*. § 3 ("The circuit courts consist of such number of circuits and judges as the Supreme Court determines by rule."). SDCL 23A-27A-21 specifically refers to "the Supreme Court" when referencing original remedial writs. Had the Legislature meant to prohibit this Court from delaying an execution, it would have said so.[3]

---

1.        It is also significant that any issues raised by direct appeal are to be consolidated with this Court's sentence review. SDCL 23A-27A-10. The Legislature intended for this proceeding to be conducted as an appeal.

2.        The statutory definitions of "judge" found in SDCL 15-12-20, 16-1A-1 and 23A-35A-1 are clearly limited to those chapters in the code and are not relevant to the constitutional analysis of the term as outlined above.

3.        Under the 1889 South Dakota Constitution, both members of the Circuit Court and Supreme Court held the title of "judge." S.D. Const. art. V, §§ 3, 14 (1889). In 1972, the Constitutional revision of Article V changed the title of members of the Supreme Court to "justice." S.D. Const. art. V, § 2 (revised 1972). Yet in 1979, when the Legislature amended SDCL 23A-27A-21, it retained the use of the word "judge" in the first sentence of that statute without adding the word "justice." This is a clear indication that the prohibition in the first sentence of SDCL 23A-27A-21 applies only to judges of the circuit court.

[¶9.]     Moreover, staying this execution comes within this Court's inherent authority to preserve the status quo. "It has long been recognized that an appellate court has inherent power to preserve the status quo pending the appeal, and may without express statutory authority in a proper case stay proceedings pending appeal." *Gamet v. Allender*, 50 S.D. 150, 208 N.W. 782, 783 (1926). This power "should always be exercised when any irremediable injury may result . . . ." *Merrimack River Sav. Bank v. City of Clay Ctr.*, 219 U.S. 527, 534-35, 31 S. Ct. 295, 296, 55 L. Ed. 320 (1911). Failure to preserve the status quo in the present situation would obviously result in an irremediable injury. Numerous death penalty cases have emphasized the uniqueness of the death penalty because of its finality. *See, e.g., Piper v. Weber*, 2009 S.D. 66, ¶ 19, 771 N.W.2d at 359-60 ("the finality of a death sentence requires that we accord higher scrutiny to capital sentencing determinations.") (citing *California v. Ramos*, 463 U.S. 992, 998-99, 103 S. Ct. 3446, 3452, 77 L. Ed. 2d 1171 (1983)).

[¶10.]     Robert's interpretation would lead to an absurd result. "[W]e have an obligation to interpret law in a manner avoiding 'absurd results . . . .'" *Murray v. Mansheim*, 2010 S.D. 18, ¶ 7, 779 N.W.2d 379, 382. This Court is statutorily required to conduct a review of the death sentence. SDCL 23A-27A-9. Without the authority to prevent execution of the defendant, this Court could not delay the execution to allow appropriate time to conduct that review. The death penalty statutes require the circuit court, after the sentence of death is imposed, to sign a warrant of execution. SDCL 23A-27A-15. This document must set forth a week during which the execution shall be completed. *Id*. Pursuant to statute, the week

of execution must be between six and eight months from the date the sentence is determined. SDCL 23A-27A-17. Proceedings under the capital sentencing statutes are to be conducted in accordance with other applicable rules of appellate procedure. SDCL 23A-27A-11. The practicalities of abiding by the rules of appellate procedure do not allow for the mandatory sentence review to be effectively completed within such a short time period.[4] Had the Legislature intended for different procedural rules to apply to this Court's mandatory sentence review, it would have provided those rules. *See, e.g.,* SDCL 23A-27A-9 (providing rules for transmittal of the trial court record to the Supreme Court when no notice of appeal is filed).

[¶11.]    "Where a statute can be construed so as not to violate the constitution, we will adopt such a construction." *State v. Piper*, 2006 S.D. 1, ¶ 50, 709 N.W.2d 783, 804 (internal quotation marks and citations omitted). Robert's position fails to recognize the constitutional significance of this Court's sentence review obligation. Meaningful appellate review is an important component to the constitutional

---

4.    In a typical appeal, briefing schedules are triggered by completion of the transcripts. By statute, court reporters have 45 days from the date they endorse the order for transcripts to prepare the transcripts. SDCL 15-26A-51. The order for transcripts may not come until ten days after the notice of appeal is filed. SDCL 15-26A-48. In a criminal appeal, the notice of appeal must be filed within 30 days of the date the judgment is signed, attested and filed. SDCL 23A-32-15. In this case, the order for transcripts was signed by the trial court after Robert's 30-day period for filing a notice of appeal expired. Appellant's brief is due 45 days from the date the completed transcript is sent to appellant's attorney. SDCL 15-26A-75. Appellee's brief is then due 45 days from the day appellant's brief is served, and the reply brief 15 days from the date appellee's brief is served. *Id.* Without any extensions, a typical appeal becomes ready for review 150 days after the order for transcripts is filed, which usually occurs a month after the sentence is imposed. This does not consider the necessity of scheduling and hearing oral argument, or take into consideration any time for this Court to draft, circulate, and vote on an opinion.

imposition of the death penalty. In 1972, the United States Supreme Court "concluded that capital punishment, as then administered under statutes vesting unguided sentencing discretion in juries and trial judges, had become unconstitutionally cruel and unusual punishment. The death penalty was being imposed so discriminatorily, so wantonly and freakishly, and so infrequently, that any given death sentence was cruel and unusual." *Pulley v. Harris*, 465 U.S. 37, 44, 104 S. Ct. 871, 876, 79 L. Ed. 2d 29 (1984) (citing *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972)). In response, two-thirds of states enacted capital sentencing schemes aimed at "limit[ing] jury discretion and avoid[ing] arbitrary and inconsistent results." *Id.* Georgia was one of those states. Four years after *Furman*, the United States Supreme Court upheld the Georgia capital punishment statutory scheme. *See id.* (citing *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976)). The South Dakota capital punishment scheme, adopted in 1979, is "nearly identical" to Georgia's. *State v. Rhines*, 1996 S.D. 55, ¶ 75, 548 N.W.2d 415, 437.

[¶12.] The issue in *Pulley* was whether comparative proportionality review of a capital sentence is required by the United States Constitution. *Pulley*, 465 U.S at 43-44, 104 S. Ct. at 876. The Supreme Court held that it is not. *Id.* at 46, 104 S. Ct. at 877. But the *Pulley* majority distinguished mandatory comparative proportionality review from appellate review. "While emphasizing the importance of mandatory appellate review under the Georgia statute, . . . we did not hold that without comparative proportionality review the statute would be unconstitutional." *Id.* at 50, 104 S. Ct. at 879 (citing *Zant v. Stephens*, 462 U.S. 862, 876, 103 S. Ct.

2733, 2742, 77 L. Ed. 2d 235 (1983)). The concurrence noted the value placed on appellate review in the decisions upholding death penalty statutes. "The statutes we have approved in *Gregg*, *Proffitt*, and *Jurek* were designed to eliminate each of these defects. Each scheme provided an effective mechanism for categorically narrowing the class of offenses for which the death penalty could be imposed and provided special procedural safeguards including appellate review of the sentencing authority's decision to impose the death penalty." *Id.* at 55, 104 S. Ct. at 882 (Stevens, J., concurring in part and concurring in judgment) (referring to the capital punishment schemes of Georgia, Florida, and Texas).[5] The United States Supreme Court has not gone so far as to hold that a capital punishment scheme without mandatory appellate review is constitutionally flawed.[6] But the value placed on meaningful appellate review as a protection against unconstitutional imposition of the death penalty is clear. "To summarize, in each of the statutory schemes approved in our prior cases, as in the scheme we review today, meaningful appellate review is an indispensable component of the Court's determination that the State's

---

5.    The same day the Supreme Court handed down *Gregg* (July 2, 1976), the Court also upheld the capital punishment schemes of Florida and Texas. *See Proffitt v. Florida*, 428 U.S. 242, 96 S. Ct. 2960, 49 L. Ed. 2d 913 (1976); *Jurek v. Texas*, 428 U.S. 262, 96 S. Ct. 2950, 49 L. Ed. 2d 929 (1976).

6.    The United State Supreme Court denied certiorari in a federal case where the Third Circuit Court of Appeals held that appellate review of a death sentence was not constitutionally required. *See United States v. Hammer*, 226 F.3d 229 (3d Cir. 2000), *cert. denied*, 532 U.S. 959, 121 S. Ct. 1488, 149 L. Ed. 2d 375 (2001) and *cert. denied*, 534 U.S. 831, 122 S. Ct. 75, 151 L. Ed. 2d 40 (2001) (holding that appellate review of a death sentence imposed under the Federal Death Penalty Statute was not required).

capital sentencing procedure is valid." *Id.* at 59, 104 S. Ct. at 884 (Stevens, J., concurring in part and concurring in judgment).

[¶13.]     According to Robert's interpretation of the capital punishment scheme, his execution would be required at the time provided by the death warrant, even if that occurred before this Court completed its appellate review of the sentence. Therefore, Robert could likely be executed without a review of the sentence, or on the basis of appellate review conducted in such an abbreviated fashion as to question its validity.[7] From the authority outlined above, application of the capital punishment statutes in this manner would be constitutionally problematic. "[I]f a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty." *Godfrey v. Georgia*, 446 U.S. 420, 428, 100 S. Ct. 1759, 1764, 64 L. Ed. 2d 398 (1980) (plurality opinion) (citations and quotation marks omitted).

[¶14.]     This Court has "note[d] that the United States Supreme Court has approved a state capital punishment scheme that is nearly identical to South Dakota's death penalty laws." *Rhines*, 1996 S.D. 55, ¶ 75, 548 N.W.2d at 437. If our capital punishment statutes are interpreted to allow for imposition of the death penalty without "meaningful appellate review" of the sentence, relying on the United States Supreme Court's approval of the Georgia scheme may no longer be constitutionally valid. As stated by the concurrence in *Pulley*, "[w]hile the Court did

---

7.     To be distinguished are instances where the appellant takes his own life during the appeals process prior to the issuance of an opinion. *State v. Anderson,* 2003 S.D. 65, 664 N.W.2d 48.

not focus on the comparative review element of the scheme in reaffirming the constitutionality of the Georgia statute, appellate review of the sentencing decision was deemed essential to upholding its constitutionality." *Pulley*, 465 U.S. at 58, 104 S. Ct. at 884 (Stevens, J., concurring in part and concurring in the judgment). Under Robert's theory, the constitutional validity of South Dakota's capital punishment scheme, as applied, may not be sustainable.

## CONCLUSION

[¶15.]    Robert's position interprets "appeal" to not include the present statutory sentence review. This interpretation ignores that section of the South Dakota Constitution article V, § 5 that grants this Court "appellate jurisdiction as may be provided by the Legislature." That interpretation is also not required by the plain language of SDCL 23A-27A-21, and would lead to an absurd result. Additionally, such a reading flies in the face of this Court's inherent authority to preserve the status quo pending appellate review. Robert's position is also not consistent with the constitutional analysis of the United States Supreme Court. It would, in essence, result in a post mortem opinion with but a pyrrhic victory for a successful appellant upon reversal. For all of the above reasons the Motion to Vacate is denied.

[¶16.]    KONENKAMP, ZINTER, SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶17.]    MILLER, Retired Justice, sitting for WILBUR, Justice, disqualified.